**In re SARA K.**

Supreme Judicial Court of Maine.

Argued May 15, 1992.
Decided July 20, 1992.

Anne H. Jordan (orally), Jensen, Baird, Gardner & Henry, Biddeford, for Mother.

Eric Herlan (orally), Drummond, Woodsum, Plimpton, & MacMahon, Portland, for Father.

Anita M. St. Onge (orally), Asst. Atty. Gen., Dept. of Human Services, Augusta, for appellee.

Robert Jenkins, Scarborough, Guardian Ad Litem.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

William and Elizabeth K. appeal from the order of the District Court (Biddeford, *Janelle, J.*) terminating their parental rights to the minor child Sara K. pursuant to 22 M.R.S.A. § 4055 (1992). The parents contend that the termination order should be set aside because: (1) the trial court failed to make adequate findings of fact as required by M.R.Civ.P. 52(a); (2) the termination order was not supported by clear and convincing evidence; and (3) the reunification efforts made by the Department of Human Services were insufficient. We disagree and affirm the judgment.

Sara K. was born four months premature on March 6, 1988, and was hospitalized at Maine Medical Center until May 23, 1988. Three days before her release from the hospital, the Department filed a petition for a child protection order pursuant to 22 M.R.S.A. § 4034 (1992). The petition alleged that Sara would be at risk of serious harm if placed in her parents' care because both parents were schizophrenic and suffered from delusions and hallucinations. The District Court issued an *ex parte* order granting temporary custody of the child to

the Department on May 20, 1988, and seven months later the court entered a final child protection order.

On August 15, 1989, the Department filed a petition for termination of parental rights. At the hearing on that petition, the court heard testimony on each parent's psychiatric condition from Dr. Bailyn, a court-appointed psychiatrist. Dr. Bailyn's evaluation was based on a clinical interview of the parents and on a review of their mental health records, including records of their hospitalizations at the Augusta Mental Health Institute during a thirteen-year period from 1977 to 1990.[1]

Dr. Bailyn testified that William suffers from paranoid schizophrenia. The features of his illness include chronic auditory hallucinations, paranoid delusions, severe disorganization, unfocused anxiety, anger, argumentativeness and episodes of violence. William's psychiatric history dates back to 1974 and has involved a number of hospitalizations. Dr. Bailyn believed that William is unable to supervise a child and that his anger, delusional thinking and unpredictable mood swings could place a child at risk of serious physical and psychological harm. Dr. Bailyn stated that the prognosis for William's recovery was very poor.

Dr. Bailyn diagnosed Elizabeth's condition as a "schizo-affective disorder, which involves aspects of the schizophrenic disorder, delusions, paranoid ideation and hallucinations, but also includes disturbances of mood such as depression or mania." Her psychiatric history dates back to the mid–1970's. She has had a number of hospitalizations in that time, including three periods of hospitalization since Sara's birth in 1988. Her hospitalizations involved treatment for prominent paranoid thinking, hallucinations, delusions, substance abuse and pronounced anger. Dr. Bailyn testified that Sara would face serious risks to her physical as well as to her emotional well-being if placed in Elizabeth's care as a result of Elizabeth's delusional thinking

and loss of control. Dr. Bailyn testified that Elizabeth's perceptions do not always coincide with the real world around her. During one period of hospitalization she could not recognize her husband. At another time she denied that Sara had ever been born. Dr. Bailyn believed that Elizabeth would be unable to gauge or appreciate her daughter's independent feelings and needs. He concluded that there was little chance Elizabeth would ever recover.

The testimony of other witnesses was consistent with Dr. Bailyn's diagnosis. Elaine Vachon, Sara's foster mother, with whom Sara has been living since she was 2½ months old, testified that Elizabeth had telephoned her a number of times about illnesses she imagined Sara to have and had insisted that Sara be treated for the imagined illnesses. Lucille LaFlamme, a home care aide who supervised Sara's visits with William and Elizabeth from August, 1988 to January, 1990, testified that on one visit she asked William whether he was taking his medication and he responded that doctors were the manipulators of Satan and that he did not need to take medication. She testified that Elizabeth was verbally abusive and threatening to her on a number of visits. She testified that on one visit, Elizabeth was experiencing hallucinations and referred to her and another visiting supervisor as "exorcists." Both Vachon and LaFlamme testified that Sara was traumatized by visits to her parents.

The parents did not testify and did not present any evidence on their behalf. The District Court issued an order of termination of parental rights on June 26, 1991. The court found by clear and convincing evidence that termination was in the best interests of Sara. The court further found by clear and convincing evidence that the parents are unable to protect Sara from jeopardy and to take responsibility for Sara

---

1. Elizabeth argued in her brief that her medical records are confidential and ought to have been excluded under M.R. Evid 503(a)(4). There is no merit in Elizabeth's claim in view of 22 M.R.S.A. § 4015 (1992) which provides that:

The physician and psychotherapist-patient privileges under the Maine Rules of Evidence ... are abrogated in relation to ... giving evidence in child protection proceeding.

within a time that is reasonably calculated to meet her needs.

## I.

■ The parents first contend that this court should vacate the termination order based on the lack of specificity in the trial court's findings, citing M.R.Civ.P. 52(a), and our decision in *In re Amber B.*, 597 A.2d 937, (Me.1991). Rule 52(a) provides in pertinent part that:

[I]n every action for termination of parental rights, the court shall make findings of fact and state its conclusions of law thereon whether or not requested by a party.

We have held that the effect of Rule 52(a) is that "in cases terminating parental rights the reviewing court can no longer rely on assumed facts but it is necessary that it have specific factual findings of the trial court." *In re Amber B.*, 597 A.2d at 938. In that case, we vacated an order terminating parental rights "because of the absence of specific findings of fact that would inform the parties or this court of the basis of [the] decision" and because "[t]he trial court's order with the findings contained therein did no more than recite the language of the statute governing the termination of parental rights." *Id.*

■ We reiterate the necessity of trial courts making specific findings of fact in judgments terminating parental rights, "thereby providing the parties with the necessary tools for a meaningful review and ensuring the integrity of the reviewing process." *Id.* We disagree, however, with the parents' argument that the District Court's findings in the present case fail to state the basis of the court's decision. The court explicitly found that: (1) in spite of the parents' love for their child and their willingness to be good parents, they have been unable to take care of Sara since she was born; (2) visits with her parents are difficult for Sara because she cannot relate to them; (3) the parents have their own preoccupations and, as result, cannot identify with the needs of their child; (4) the prognosis for improvement in the parents' conditions is not good and certainly cannot

be improved during the period of time that Sara will need the most care and the most love; (5) even with support neither parent could adequately take care of their child. The District Court's findings leave no doubt as to why the court concluded that the termination order was appropriate.

## II.

■ William and Elizabeth next contend that there was insufficient evidence in the record to justify the court's findings that the parents are unable to protect Sara from jeopardy and to take responsibility for Sara within a time that is reasonably calculated to meet her needs. *See* 22 M.R.S.A. § 4055(1)(B)(2)(b)(i) & (ii). Section 4055 requires that the findings of inability to protect the child from jeopardy and to take responsibility for the child within a time that is reasonably calculated to meet the child's needs must be supported by clear and convincing evidence. The heightened standard of proof reflects the fact that the Due Process Clause of the Fourteenth Amendment requires that before a State may sever completely and irrevocably the rights of parents in their natural child, the State must support its allegations by at least clear and convincing evidence. *See In re Amber B.*, 597 A.2d at 938 (citing *Santonsky v. Kramer*, 455 U.S. 745, 747–48, 759, 102 S.Ct. 1388, 1391–92, 1397–98, 71 L.Ed.2d 599 (1982)). "In reviewing the District Court's findings, we examine the entire record to determine whether that court rationally could have found clear and convincing evidence to support its factual conclusions." *In re Misty Lee H.*, 529 A.2d 331, 333. (Me.1987).

We conclude that the District Court had sufficient evidence before it to determine that it was highly probable that both William and Elizabeth would be unable to protect Sara from jeopardy or to take responsibility for Sara within a time reasonably calculated to meet her needs. This is not a case of uncaring or unloving parents; all the witnesses agreed that William and Elizabeth love their child. Nonetheless, the uncontradicted testimony was that Sara would face significant risk of physical and

emotional harm if placed in the care of either parent. The parents' judgments are influenced by delusions, their reactions are unpredictable, both have been repeatedly hospitalized as a result of their incapacity to take care of themselves, and even with supervision they would be unable to take care of Sara.

### III.

 Finally, the parents argue that the Court's order terminating parental rights was unreasonable in view of the Department's insufficient reunification efforts. "Before filing a petition to terminate parental rights, the DHS must attempt to reunify the family by developing a reunification plan to rehabilitate." *In re Annette P.*, 589 A.2d 924, 927 (Me.1991) (citing 22 M.R.S.A. § 4041(1)(A)(1)). We have held that "the failure of the DHS to fulfill its obligation under section 4041 does not, by itself, constitute an independent ground for denying termination of parental rights, but is only one factor to be considered in evaluating the parents' efforts to rehabilitate." *Id.* at 927–98 (citing *In re Daniel C.*, 480 A.2d 766, 770 (Me.1984)).

The record in this case discloses that the Department provided weekly supervised visits between Sara and her parents over a three-year period. Initially the visits took place in the parents' home but were subsequently conducted out of the home because of the Department's concern for Sara's safety. In addition to the supervised visits, the Department provided the parents with thirty hours of in-home parenting classes. The Department decided to discontinue the classes when it concluded that the parents were not making any progress in acquiring parenting skills. The limited capacity of a parent will not excuse the Department from attempting rehabilitation, but the Department is not charged with the duty of persisting in efforts that can only be destined for failure. *See In re Annette P.*, 589 A.2d at 929 (quoting *People In Interest of P.B.*, 371 N.W.2d 366, 372 (S.D.1985).

In this case the court was favorably impressed with the parents' strong desire to care for their child, but found that in spite of their willingness to be good parents, they are unable to meet their child's needs. That incapacity is attributable to their severe psychiatric condition and is not something that greater reunification efforts could have remedied.

The entry is:

Judgment affirmed.

All concurring.