2004 ME 104

**In re THOMAS D.**

Supreme Judicial Court of Maine.

Argued: June 8, 2004.
Decided: Aug. 4, 2004.

Donna A. Bailey, Esq. (orally), Saco, Pamela S. Holmes, Esq., McGarry & Holmes, LLC, Wells, for appellants.

G. Steven Rowe, Attorney General, Matthew Pollack, Asst. Attorney General (orally), Joseph Wannamacher, Asst. Attorney General, Elizabeth Stout, Asst. Attorney General, Augusta, for appellee.

Christopher Dilworth, Esq., Falmouth, for Guardian ad Litem.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] In this parental rights termination action, we examine the effect that the failure to establish a rehabilitation and reunification plan for a parent has on the District Court's later consideration of a termination petition brought by the Department of Human Services. The mother and father of Thomas D. appeal from the judgment of the District Court (Biddeford, *Kennedy, J.*) terminating their parental rights pursuant to 22 M.R.S.A. § 4055 (2004). The parents challenge several aspects of the judgment, including the sufficiency of the evidence establishing their parental unfitness and the court's determination of Thomas's best interest. We vacate the court's judgment as to the father because we conclude that the finding of parental unfitness was not supported by clear and convincing evidence. We also vacate the court's judgment as to the mother. Although one of the court's bases for finding parental unfitness as to the mother was supported by clear and convincing evidence, that determination and the separate determination of the child's best interest must be reconsidered in view of our decision regarding the father.

## I. BACKGROUND

[¶ 2] Angela S. and William D. are the biological parents of Thomas D., who is now four years old. Angela is also the

mother of Thomas's older sister, Natalie, who is five years old.

## A. Jeopardy Proceeding

[¶ 3] The Department first became involved with the family in October 2001, after Natalie was seen at an emergency room for scabies and head lice. In January 2002, employees of the Department went to the family's home to complete a safety assessment. There, they found unsanitary and unkempt conditions. Thomas and his clothing were observed to be filthy, and Angela was observed changing Thomas's diaper in an unsanitary area. Several safety hazards existed in the home, including unsecured heavy objects and construction materials. Many empty beer cans, some in bags, were observed in the residence.

[¶ 4] In response to these conditions, the Department sought and obtained ex parte preliminary protection orders and removed Thomas and Natalie from the home. The parents waived their right to a summary preliminary hearing, and the court entered an order in January 2002 providing that the children would remain in the Department's custody. Natalie is the subject of a separate proceeding that is not the subject of this appeal.

[¶ 5] A jeopardy hearing was held in February regarding Thomas, and the court (*Foster, J.*) entered an agreed-to jeopardy order that provided that Thomas would remain in the Department's custody, and contained the following findings:

> Jeopardy consists of the following circumstances: the children have been living in an unsanitary and unsafe home, and have been subject to emotional abuse by exposure to domestic discord and what the Department believes is substance abuse. Thomas has had bruises that are consistent with inflicted injury. The children have not had their medical needs met: ... Thomas has mild to moderate delays in all areas of development.

[¶ 6] Thomas has many special needs because of severe developmental disabilities. He requires multiple medical appointments and treatments with service providers, which necessitate a great deal of time and effort on the part of his caregivers to ensure that he attends those appointments. He had a significant and largely untreated medical condition of crossed eyes at the time he went into the Department's custody, and some of his basic immunizations had been neglected.

## B. Rehabilitation and Reunification Plans

[¶ 7] The Child and Family Services and Child Protection Act, 22 M.R.S.A. §§ 4001 to 4099–C (2004), requires that a rehabilitation and reunification plan must be developed by the Department when a child is considered to have entered foster care, *id.* § 4041(1–A)(A), (C). "A child is considered to have entered foster care on the date of the first judicial finding that the child has been subjected to child abuse or neglect or on the 60th day after the child is removed from the home, whichever occurs first." *Id.* § 4041(1–A).

[¶ 8] The jeopardy order in this case stated that "[t]he Department has submitted a plan for reunification/rehabilitation of the family, or a plan to avoid the removal of the children from the home. That plan is incorporated by reference." There was, however, no plan attached to the jeopardy order or filed with the court.

[¶ 9] In the ensuing months, the Department provided Angela with rehabilitation and reunification services. William participated in some of the services offered by the Department, but he and the Department were unable to agree upon a rehabilitation and reunification plan. William dis-

puted the Department's position that he needed to complete substance abuse counseling and a batterers intervention program as prerequisites to reunification. William did, however, complete substance abuse and psychological evaluations scheduled by the Department.

[¶ 10] The parties returned to court on July 24, 2002, for their first judicial review hearing. The court entered a case management/pretrial order that referred the case to the court's contested trailing docket for a one-day hearing on the services to be completed by William. In a separate order after judicial review, the court stated that "[t]he issue of the rehabilitation and reunification services to be completed by the father will be resolved by the court after a full hearing."

[¶ 11] In November 2002, Angela filed a motion for judicial review seeking an order requiring "further and intensive steps in reunification not planned by the Department." The court conducted a case management conference in November and referred the motion to the court's contested trailing docket for a trial.[1]

[¶ 12] The Department's petition to terminate the parents' parental rights was filed in January 2003. A judicial review and permanency planning hearing was conducted in February, and the court issued an order reflecting that a "case plan prepared by the caseworker will be admitted into evidence and incorporated, within 10 days" and that the "mother's request for in-home services is still pending." The record does not reflect that a case plan was subsequently filed with the court. The court also entered a separate case

management order in February that referred the case to the contested trailing docket for a two to three-day trial on the issues of services, compliance with the reunification plan, and termination.[2]

[¶ 13] A trial on the termination petition was conducted over five days in June and July 2003. The question of whether a plan was ever submitted to the court was raised during the trial when the Department sought to introduce a written plan dated March 2002. After a lengthy colloquy between the court and counsel, the court concluded that "the reasonable inference is that [the plan] probably never got to anybody," and admitted the exhibit only to show what the Department's proposed plan was, and not "as evidence that there was any agreement as to a reunification plan."

[¶ 14] The foregoing history establishes that at or near the time of the jeopardy order in February 2002, there was agreement between the Department and the mother as to the services that were required and would be provided as part of her plan of rehabilitation and reunification, but a written plan was never submitted to or approved by the court. In addition, the mother's November 2002 motion seeking more intensive reunification services was not acted upon prior to the termination hearing that commenced in June 2003. As to the father, there was never agreement as to a plan for the services that were required, and although the issue was referred for a hearing, it was ultimately never acted upon by the court.

---

1. The substance of the mother's motion was not addressed until the court's termination order in September 2003, in which the court concluded that the Department's refusal to provide intensive in-home services was reasonable.

2. A second case management order was entered in May 2003 that referred the case for a two-day trial on jeopardy, compliance with the reunification plan, and "ability of parents to address special needs."

## C. Termination Order

[¶ 15] By a judgment entered in September 2003, the District Court terminated the rights of Angela and William to Thomas, concluding by clear and convincing evidence pursuant to 22 M.R.S.A. § 4055(1)(B)(2) that: (a) both parents are unwilling or unable to protect the child from jeopardy and those circumstances are unlikely to change within a time reasonably calculated to meet Thomas's needs; (b) William is unwilling or unable, and Angela is unable, to take responsibility for Thomas within a time reasonably calculated to meet his needs; (c) William failed to make a good faith effort to rehabilitate and reunify with Thomas; and (d) terminating both parents' rights is in Thomas's best interest.

[¶ 16] The court concluded that William's failure to engage in reunification services demonstrated his inability to protect Thomas from jeopardy:

Since the parties[ ] have reunified, [William] has been present for most of the visits with Tommy, but the court believes that all of his efforts in this matter have been at a superficial level, and that there is no convincing evidence that he is even beginning to meet or address the preexisting issues by abstaining from drinking, engaging in substance abuse counseling, or commencing or completing a certified batterers intervention program such as Violence No More. Accordingly, the court concludes that [William] is clearly both unable to prevent Tommy from being in jeopardy ... and is unwilling to take responsibility for Tommy within a time which is reasonably calculated to meet his needs.

[¶ 17] The court found that Angela's reunification efforts "have been sincere and well motivated," but that her resumption of cohabitation with William "in and of itself justif[ied] findings that termination is warranted at this time." In addition, even if Angela's cohabitation with William was not, considered alone, a sufficient basis to establish her inability to protect the child from jeopardy, termination was still warranted because of her inability to care for the child:

Even if this were not so, the court would nevertheless conclude, although it is a closer question, that while [Angela] is willing to take responsibility for Tommy within a time which is reasonably calculated to meet his needs, she is unable to do so. The court would not reach this second conclusion but for the singular nature of Tommy's needs. As previously noted, Tommy has severe developmental disabilities, and successful treatment of those disabilities has required a substantial expenditure of time and effort together with close cooperation with treatment providers by the [foster parents] during the time that Tommy has been in their care. These efforts have included multiple medical appointments on a weekly basis, and daily follow-through with recommendations made by various providers of medical and developmental services.

The court then considered the evidence regarding Angela's reunification efforts and concluded that she did not have the "ability to rise to the required very high level of parenting for Tommy that will be difficult for even the most qualified and committed parent to maintain."

[¶ 18] The court also determined that the "physical threats in [Angela and William's] home have been fully remediated" and that there had been no "show[ing of] physical abuse by these parties by clear and convincing evidence." As to the motion for intensive in-home services filed by Angela in November 2002, the court concluded that "the Department's refusal to expand contact and services as requested

by [the parents] was reasonable, in light of both the predictable disruptive effects on Tommy, and the fact that a permanent return seemed unlikely, even if the requested services had been provided."

[¶ 19] The court concluded that the termination of William's and Angela's parental rights was in Thomas's best interest based on its findings regarding parental unfitness, and because Thomas had become bonded with his foster parents. The court found that the foster parents were "exceptionally well situated to provide a better than adequate level of care for Tommy":

> [I]n light of the facts that Tommy is developmentally behind by approximately one year, that he is currently in a critical time in which logical pathways are being irreversibly constructed in the brain, and that a significant disruption, such as removal from the stable and predictable environment in the [foster parents'] home, and placement with [Angela] in a much less stable and predictable environment, is not only likely to be detrimental, but that it is highly likely to produce permanent negative results.

[¶ 20] Both parents appeal from the judgment.

## II.  DISCUSSION

### A.  Issues Presented

[¶ 21] Angela and William raise a variety of issues on appeal, including a challenge to the sufficiency of the evidence establishing their parental unfitness and the court's determination of Thomas's best interest.  Pursuant to 22 M.R.S.A. § 4055(1)(B)(2), termination of parental rights is proper if the District Court finds by clear and convincing evidence at least one of the following four grounds for parental unfitness:

(i) The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;

(ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

(iii) The child has been abandoned; or

(iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

If the court finds at least one of these four grounds, it must then also find that termination is in the best interest of the child. *See In re Alana S.*, 2002 ME 126, ¶ 15, 802 A.2d 976, 980 (citations omitted).  "[T]he court may not terminate a parent's rights unless it is persuaded by clear and convincing evidence that the Department has met its burden."  *In re Scott S.*, 2001 ME 114, ¶ 14, 775 A.2d 1144, 1149 (citing 22 M.R.S.A. § 4055 (1992 & Supp.2000); *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).  This Court will affirm an order terminating parental rights if:

> a review of the entire record results in a determination that the District Court rationally could have found clear and convincing evidence to support its factual conclusions with regard to any one of the alternative bases for terminating parental rights.  The clear and convincing standard is met if the District Court could reasonably have been persuaded that the required factual findings were proved to be highly probable.

*In re Elijah R.*, 620 A.2d 282, 284 (Me. 1993) (citations omitted).

[¶ 22] Central to both parents' challenge is the fact that a rehabilitation and reunification plan was never established as to

William during the nineteen-month period between the entry of the jeopardy order and the entry of the termination order. *See* 22 M.R.S.A. § 4041(1–A)(A)(1). William contends that it was error to base findings of his parental unfitness on his failure to totally abstain from alcohol and complete substance abuse counseling and a batterers intervention program because his need to abstain from alcohol and for those services was never established.[3] Angela contends that this error undermines the court's findings as to her parental unfitness, as well as the separate determination of Thomas's best interest, because these findings were based, in substantial part, on the finding that her resumption of cohabitation with William posed a continuing risk of jeopardy to Thomas.

## B. Rehabilitation and Reunification Plans

[¶ 23] Responsibility for rehabilitation and reunification of the family is shared by the Department and a parent, *id.* § 4041(1–A), and it is the Department that must first develop a proposed plan, *id.* § 4041(1–A)(A)(1). The Department's and parents' respective responsibilities for the development and implementation of plans were substantially revised by amendments to the Child and Family Services and Child Protection Act in 2002. *See generally* P.L.2001, ch. 559, § CC–5 (effective March 25, 2002). We turn to examine those revised requirements.

[¶ 24] As previously noted, rehabilitation and reunification plans must be developed by the Department when the child is con-

sidered to have entered foster care. 22 M.R.S.A. § 4041(1–A). "A child is considered to have entered foster care on the date of the first judicial finding that the child has been subjected to child abuse or neglect or on the 60th day after the child is removed from the home, whichever occurs first." *Id.* "In developing the . . . plan, the department shall make good faith efforts to seek the participation of the parent." *Id.* § 4041(1–A)(A)(1)(a). Parents are required to cooperate with the Department in the development and pursuit of the plan. *Id.* § 4041(1–A)(B)(2), (8).

[¶ 25] The statute sets forth several required elements for the case plan, including the "[r]ehabilitation services that will be provided and must be completed satisfactorily prior to the child's returning home." *Id.* § 4041(1–A)(A)(1)(c)(iii). A parent must, in turn, "[t]ake part in a reasonable rehabilitation and reunification plan." *Id.* § 4041(1–A)(B)(3). The Department is obligated to "circulate the plan to the parties at least 10 days before a scheduled court hearing and shall present the plan to the court for filing at that hearing." *Id.* § 4041(1–A)(A)(1)(b). In the event that the Department and a parent cannot agree on a plan, a judge "shall set the matter for hearing or may conduct a Case Management Conference," and shall issue an order after review setting forth the reunification plan within twenty-one days of the hearing. Case Management Procedure for Child Protection Cases, Admin. Order M.S.J.C. § V(A)(4), (A)(13) (adopted effective June 1, 1999). If the parties are unable to agree on any

---

**3.** William also challenges the court's denial of his request for funds for an independent psychological evaluation. He desired the evaluation to counter the opinions of a psychologist employed by the Department who had evaluated him and concluded, among other things, that he is likely to exhibit "very problematic parenting at this time." The court ultimately

concluded that the Department's psychologist's testimony was unreliable because it did not show "the necessary independence from the Department's findings and conclusions" and, therefore, did not consider it. The court acted within its discretion in denying William's request. *See* 22 M.R.S.A. § 4007(3) (2004); M.R. Civ. P. 35.

proposed changes to a previously adopted plan, the matter is referred to the court's case management system for judicial resolution. 22 M.R.S.A. § 4041(1–A)(A)(4).

[¶ 26] Unless the Department has been excused from reunification efforts, the *rehabilitation and reunification plan* is the centerpiece of child protective proceedings following a jeopardy determination. The plan provides a roadmap by which the Department and a parent are expected to cooperatively seek to rehabilitate the conditions that resulted in jeopardy to the child, and to reunify the family if reunification can be achieved within a time period that will meet the child's needs. Following a jeopardy determination, the court must review the case at least once every six months and issue written findings regarding "[t]he extent of the parties' compliance with the case plan and the extent of progress that has been made toward alleviating or mitigating the causes necessitating placement in foster care." *Id.* § 4038(5)(D).[4] If the Department files a petition for termination of parental rights, the plan establishes benchmarks by which to assess whether a parent has successfully ameliorated the problems that led to the initial finding of jeopardy. *See id.* § 4041(1–A)(A)(1)(a) (stating that, "[i]nformation that must be included in developing the plan includes . . . a means to measure the extent to which progress has been made").

[¶ 27] In this case, Thomas entered foster care for purposes of section 4041(1–A)(A)(1)(a) no later than February 27, 2002, the date of the jeopardy order, which was less than sixty days after he was taken into the Department's custody pursuant to the ex parte preliminary protection order entered January 7, 2002.[5] The court concluded at the termination hearing held a year and a half later that the Department's proposed written plan prepared in March 2002 "probably never got to anybody" and the question of what services William should receive was referred for a hearing as early as July 2002, but was ultimately never addressed. The court's decision to terminate William's parental rights was based, however, on its conclusion that he failed to comply with the required elements of a rehabilitation and reunification plan following the jeopardy order:

> [William] complied with some of the recommended elements of the reunification plan as it applied to him, including visitation with Tommy (episodic at times, but regular in the months preceding the hearing) and obtaining a substance abuse evaluation. He chose not to participate in Violence No More, as he has stated his consistent belief that there was no problem of domestic violence in his relationship with [Angela] and that he had no substance abuse problem. The court concludes that each of these assertions is contradicted by a fair view of the evidence.

The court also found that "there is no convincing evidence that he is even beginning to meet or address the preexisting issues by abstaining from drinking, engaging in substance abuse counseling, or commencing or completing a certified batter-

---

4. The judicial review orders entered in this case state that the court has reviewed the "extent of the parents' compliance with the case plan and progress made to rehabilitate and reunify the family," but do not describe the extent of the compliance and progress made.

5. We need not decide and, therefore, do not address whether it is the preliminary protection order or the subsequent jeopardy order that is the "first judicial finding that the child has been subjected to child abuse or neglect" for purposes of section 4041(1–A). 22 M.R.S.A. § 4041(1–A) (2004).

ers intervention program such as Violence No More."

[¶ 28] We have previously concluded that if the Department fails to provide adequate reunification services, that alone is not a basis to deny a petition to terminate parental rights, but may be a factor in evaluating parental unfitness. *E.g., In re Justin T.*, 640 A.2d 737, 740 (Me.1994); *In re Sara K.*, 611 A.2d 71, 75 (Me.1992). We similarly conclude that the Department's and a parent's failure to complete a rehabilitation and reunification plan is not alone a basis to deny a termination petition, but is an important factor that must be carefully evaluated particularly when, as here, the court's determination of parental unfitness is premised on a parent's failure to obtain and complete specific services. Accordingly, we must next examine whether, in the absence of a plan mandating services, William's failure to abstain from alcohol use, and his failure to participate in and complete substance abuse counseling and a batterers intervention program, was sufficient to support the court's finding of his parental unfitness.

## C. Sufficiency of the Evidence

### 1. Substance Abuse

[¶ 29] The jeopardy order found that, among other things, jeopardy to Thomas arose from "what the Department believes is substance abuse." At the termination hearing, the court received evidence of the extent of William's alcohol use in January 2002, as demonstrated by the existence of numerous empty beer cans in the home and his consumption of as many as five to six beers per day. A letter to William from the Department's caseworker in July 2002 stated, among other things, that he was expected to participate in a substance abuse evaluation, but the letter did not mention that he was expected to abstain from alcohol or participate in sub-

stance abuse counseling. William was subsequently evaluated for substance abuse by Carolyn Parker, and she concluded that William did not need further in-depth assessment because of his low score on the Michigan Alcohol Screening Test (MAST), noting his acknowledgement that he drank "two beers, two days weekly," but that he should continue couples counseling with Angela. William and Angela subsequently engaged in couples counseling as recommended by Parker. The court concluded in its termination order that the Parker evaluation "should be given no probative value, as it was entirely based on [William]'s self-reporting to Ms. Parker, which the court believes was not truthful."

[¶ 30] The court's termination findings also cite the fact that Angela "minimized the extent of physical and emotional abuse in the household and of [William]'s drinking" after they resumed cohabitation. Angela testified in July 2003 that since their resumption of cohabitation, William had significantly cut down on his drinking and that "the last time I saw him drink was—I think it was the Superbowl weekend."

[¶ 31] The court ultimately found that "there is no convincing evidence that [William] is even beginning to meet or address the preexisting issues by abstaining from drinking [or] engaging in substance abuse counseling" and concluded that he "is clearly both unable to prevent Tommy from being in jeopardy pursuant to 22 M.R.S.A. § 4055(1)(D)(2)(b)(i) and is unwilling to take responsibility for Tommy within a time which is reasonably calculated to meet his needs pursuant to sub-§ (2)(B)(ii)."

[¶ 32] The court was fully justified in considering evidence of William's alcohol use as of January 2002. "Evidence of past jeopardy is relevant to the future,

and in the case of a custodial parent it is highly probative, but the question before the court is necessarily whether there is *prospective* jeopardy." *In re Tabitha R.*, 2003 ME 76, ¶ 7, 827 A.2d 830, 832 (emphasis added). The jeopardy order found that the children had been "subject to emotional abuse by exposure to domestic discord and *what the Department believes is substance abuse*" (emphasis added). William's subsequent substance abuse evaluation and the evidence of his reduced consumption of alcohol during the seventeen-month period following the jeopardy order do not confirm the Department's belief. Accordingly, in the absence of (1) a rehabilitation and reunification plan memorializing William and the Department's agreement that William's abstention from alcohol and his completion of substance abuse counseling were needed to eliminate the conditions of jeopardy, or (2) a court order establishing such a plan, the record regarding William's use of alcohol does not establish William's parental unfitness by clear and convincing evidence.

### 2. Domestic Abuse

[¶ 33] The jeopardy order also contained the finding that "the children have been ... subject to emotional abuse by exposure to domestic discord."[6] In her July 2002 letter to William, the Department's caseworker stated that she expected William to "attend and complete Violence No More." At the termination hearing, the court received evidence that at the time the children went into the Department's custody, the parents frequently argued and that the father had, on one occasion, pulled the phone cord out of the wall during an argument. The court also found that during the months following

the jeopardy determination, the mother had, for a time, "discontinued her relationship with [William], and admitted to [the DHS Caseworker] ... that her relationship with [William] had been 'at least emotionally abusive.'" In its termination decision, the court concluded that William was unable to prevent Thomas from being in jeopardy and take responsibility for him within a period that is reasonably calculated to meet his needs, in part, because he had not commenced or completed "a certified batterers intervention program such as Violence No More."

[¶ 34] Because there was no rehabilitation and reunification plan requiring William to complete a certified batterers intervention program, his failure to complete such a program is not, taken alone, clear and convincing evidence supporting the court's conclusion regarding prospective jeopardy. The evidence regarding the parties' arguments and Angela's realization, expressed to her counselor, that William was "controlling" and that the relationship had been emotionally abusive relates almost entirely to the status of the parties' relationship as of January 2002. Subsequent to the jeopardy finding and following their resumption of cohabitation, Angela and William engaged in individual and joint counseling, completed parent education programs, and improved the condition of their shared residence.

[¶ 35] The jeopardy order did not find that William committed domestic violence or domestic abuse; rather, it found that the children were subjected to emotional abuse by exposure to "domestic discord." Certified batterers intervention programs are, however, reserved for perpetrators of

---

**6.** As counsel for the Department of Human Services conceded at oral argument, pinning down the meaning of "domestic discord" is

difficult, and the Department uses the term to describe a "softer" degree of domestic violence.

"domestic abuse."[7] 1A C.M.R. 03 201 015–5 § 4.1(B)(3) (2003). In the absence of a plan establishing as a benchmark that William must complete a certified batterers intervention program, the record does not otherwise support a conclusion by clear and convincing evidence that William was an appropriate candidate for a batterers intervention program and that his failure to complete such a program results in prospective jeopardy to the child.

### 3. Termination of Angela's Parental Rights

■ [¶ 36] The termination order acknowledges that the termination of Angela's parental rights poses a more difficult question. The court found that although Angela "is willing to take responsibility for Tommy within a time which is reasonably calculated to meet his needs, she is unable to do so." The court concluded that Angela's resumption of cohabitation with William showed an inability to protect Thomas from jeopardy. The court also based its determination of Angela's parental unfitness on its finding that her skill deficiencies rendered her "unable to functionally cope with Tommy's developmental disabilities while he was in her care." Even if Angela's resumption of cohabitation with William did not "in and of itself justify findings that termination is warranted at this time," Angela's inability to "adequately respond to Tommy's needs" supports termination. Our conclusion that the court erred in finding ongoing jeopardy with respect to William undermines one of the two reasons set forth by the court in concluding that Angela is unable to assume responsibility for Thomas and protect him from jeopardy. The court found, however, that separate and apart from the issue of cohabitation, Angela's inability to cope with Tommy's special needs was itself sufficient to establish parental unfitness.

[¶ 37] Competent evidence in the record fully supports the court's conclusion that

---

7. The regulations governing batterers intervention programs set forth the following criteria regarding "domestic abuse":

the occurrence of the following acts between family or household members or by a family or household member upon a minor child of a family or household member. 1. Attempting to cause or causing bodily injury or offensive physical contact, including sexual assaults . . .; 2. Attempting to place or placing another in fear of bodily injury through any course of conduct including, but not limited to, threatening, harassing, or tormenting behavior; 3. Compelling a person by force, threat of force or intimidation to engage in conduct from which the person has a right or privilege to abstain or to abstain from conduct in which the person has a right to engage; 4. Knowingly restricting substantially the movements of another person without that person's consent or other lawful authority by: removing that person from that person's residence, . . . or confining that person for a substantial period either in the place where the restriction commences or in a place to which that person has been moved; 5. Communicating to a person a threat to commit, or to cause to be committed, a crime of violence dangerous to human life against the person to whom the communication is made or another, and the natural and probable consequence of the threat, whether or not that consequence in fact occurs, is to place the person to whom the threat is communicated, or the person against whom the threat is made, in reasonable fear that the crime will be committed . . . .

1A C.M.R. 03 201 015–2 § 1.1(A) (2003). Certified Batterers Intervention Programs do not include modalities for separate treatment services such as individual counseling, couples or conjoint counseling, anger management, addiction counseling, or family therapy. *Id.* at 015–5 § 4.2(A). Participants are required to attend a minimum of forty-eight weekly sessions that are each at least ninety minutes long, with a voluntary opportunity to continue, *id.* § 4.4, and batterers must at least partially pay for the program, *id.* § 4.7(B).

Angela will not be able to functionally cope with Thomas's disabilities and be able to follow through on a consistent basis if he is in her care. For example, Angela did not utilize recommendations from Thomas's speech therapist regarding Thomas's speech difficulties, did not demonstrate that she retained parenting skills obtained from her occupational therapist, her ability to regulate Thomas decreased as time passed according to a psychology clinician, and, according to a visitation supervisor, Angela failed to show sufficient interest in working on speech and development strategies for Thomas.

[¶ 38] Proof of only one definition of parental unfitness may justify termination if it is accompanied by a finding that termination is in the best interest of the child. *In re Annie A.*, 2001 ME 105, ¶ 20, 774 A.2d 378, 384. Here, the court properly determined that its findings regarding Angela's inability to provide the high level of care required because of Thomas's special needs support at least one definition of parental unfitness. Nonetheless, because we conclude that the termination of William's parental rights must be vacated, the termination of Angela's parental rights must also be vacated because the denial of the petition as to William's rights has a direct bearing on the best interest analysis as it pertains to Angela's parental rights. The court's assessment of the threat posed by Angela's continued cohabitation with William was an important component of its conclusion that the termination of Angela's parental rights was in Thomas's best interest.

[¶ 39] In addition, because the court concluded that the termination of William's parental rights was justified, it did not have reason to consider whether Angela's

inability to provide for Thomas's special needs on her own would be ameliorated if she shared parenting responsibilities with William. Accordingly, on remand, the court must also reconsider whether Angela's inability to care for Thomas's special needs remains a basis for termination in view of William's possible availability to co-parent the child with her if, in the future, reunification was deemed warranted.

[¶ 40] We find the remaining issues raised by William and Angela to be without merit and do not address them separately.

## III. CONCLUSION

[¶ 41] The formulation of rehabilitation and reunification plans is a cornerstone of the Child and Family Services and Child Protection Act. Once a child in jeopardy is removed from her or his parents' custody, the law provides a relatively brief window of opportunity for the Department and the parents to work toward reunification. The importance of the early completion of a plan cannot be overstated. In the absence of extraordinary circumstances, the better practice in cases in which rehabilitation and reunification efforts are required is for the Department and parents to not proceed to a hearing on a petition to terminate parental rights without first having finalized the rehabilitation and reunification plans required by the Act.[8]

[¶ 42] We vacate the judgment's termination of William's parental rights because, absent a plan establishing the benchmark rehabilitative services he was required to receive, the record does not support a finding by clear and convincing evidence that his failure to abstain from alcohol, complete substance abuse counseling, and

---

8. Rehabilitation and reunification efforts are not required if the court orders that they not be commenced or, if commenced, that they

may be discontinued. 22 M.R.S.A. § 4041(2)(A–2).

complete a batterers intervention program render him unwilling or unable to protect Thomas from jeopardy, 22 M.R.S.A. § 4055(1)(B)(2)(b)(i), unwilling or unable to take responsibility for Thomas in a time frame which is reasonably calculated to meet Thomas's needs, *id.* § 4055(1)(B)(2)(b)(ii), or that he failed to make a good faith effort to rehabilitate and reunify with Thomas, *id.* § 4055(1)(B)(2)(b)(iv). As to Angela, we conclude that competent evidence supports the court's conclusion that she is unable to take responsibility for Thomas within a time which is reasonably calculated to meet his needs. *Id.* § 4055(1)(B)(2)(b)(ii). Nonetheless, we vacate the judgment as to Angela because this conclusion regarding her parental unfitness and the related best interest analysis must be reconsidered in view of the fact that, as a consequence of this appeal, William's parental rights have not been terminated.

The entry is:

Judgment vacated and remanded to the District Court for (1) entry of judgment denying the petition as to the father, and (2) further proceedings consistent with this opinion as to the mother.