MAINE SUPREME JUDICIAL COURT                      Reporter of Decisions
Decision:     2018 ME 62
Docket:       Cum-17-532
Submitted
  On Briefs:  April 25, 2018
Decided:      May 3, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILDREN OF DANI B.


PER CURIAM

[¶1]  Dani B. appeals from a judgment of the District Court (Portland, *Powers, J.*) terminating her parental rights to her two children.[1]  She argues that the record cannot support the finding of parental unfitness.  We affirm the judgment.

[¶2]  The Department filed a child protection petition with respect to the younger child in November 2011 when that child was nine months old.  *See* 22 M.R.S. § 4032 (2017).  The petition alleged that the mother, who was abusing substances, left the child with a relative while evading arrest on charges of burglary, theft, and criminal mischief.  In January 2012, the court (*Goranites, J.*) entered a jeopardy order, with the parties' agreement, that granted the

---

[1]  The children's fathers do not appeal from the termination of their parental rights, and we focus on the procedural history and findings regarding the mother.

2

Department custody of the child and placed the child with his paternal grandmother. *See* 22 M.R.S. §§ 4035(2), 4036(1)(F) (2017).

[¶3] In March 2012, the mother's older child, who had been residing with his father, came into the Department's custody through a preliminary protection order entered by the court (*Mulhern, J.*) when his father left him with a relative while the mother was incarcerated. *See* 22 M.R.S. § 4034(2) (2017). The court (*Goranites, J.*) entered a jeopardy order with respect to that child, upon the parties' agreement, in May 2012, granting the Department custody and placing the child, then age six, with his paternal grandmother. *See id.* §§ 4035, 4036.

[¶4] The Department provided, and the mother participated in, multiple services, culminating in a trial placement of both children with the mother beginning in late January 2013. The placement was suspended for ten days in September 2013 and then terminated in November 2013. The children entered foster care, and the mother continued to pursue reunification.

[¶5] The children were again placed in the mother's home in a second trial placement that began in the summer of 2014 for the older child and the early fall of 2014 for the younger child. In February 2015, custody of the two children was formally returned to the mother. All parties anticipated that the

case would be dismissed in April 2015, but the mother admitted that she had used cocaine at the end of March, and the matter remained open.

[¶6] In February 2016, the Department petitioned for preliminary protection orders for the children after a brick was thrown through the window of their home, possibly by the mother's recent boyfriend, a man who was involved with drugs and had threatened to shoot at her home after she broke up with him. The court (*Powers, J.*) signed preliminary protection orders placing the children in the custody of the Department.

[¶7] The Department petitioned for termination of the mother's parental rights as to both children in June 2016. The court held a trial on that petition over the course of three days between October 12 and 16, 2017. It then entered a judgment granting the petition to terminate the parents' parental rights after reaching extensive findings of fact by clear and convincing evidence. 22 M.R.S. § 4055(1)(B)(2) (2017); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195. All of those facts are supported by competent evidence in the record. *See In re A.M.*, 2012 ME 118, ¶ 29, 55 A.3d 463.

[¶8] Based on the facts that it found, the court reached the following ultimate findings.

> This is a tragic case regarding [the mother], who has made some recent progress toward resolving her serious parenting

deficits. It is, however, a situation of too little progress, too late in the process. She still cannot meet her children's needs or protect them from jeopardy in any reasonable time. . . .

[The mother] still suffers from mental health issues and remains on suboxone to assist her from relapsing on opioids. She has a history of getting involved with poor parental figures who also engage in violent behaviors. Her latest male friend is an unknown regarding the above, though [the mother] thinks he is fine. She remains having three weekly supervised contact with the two boys, one of whom has significant medical needs and the other has considerable emotional issues. They need attentive and reliable caregiving that she cannot be counted on to provide. [The mother] cannot yet be trusted to care for these boys and keep them safe in light of the family's history. She has had two failed, though lengthy, trial placements, and the prospect of a third would entail at least months more of uncertainty. [The mother]'s lack of proper judgment regarding her partners remains a serious concern, as she has historically put her needs before the boys' needs.

[The mother] clearly loves the boys and is willing to become a proper parent. She has already had 5 years for one child and 6 years for the second without still being ready to be their capable and safe parent. This is unfortunate and devastating to [the mother], but the facts clearly show her inability to function as the boys' parent now or in the near future.

. . . .

. . . [T]hese cases have been pending for 5 and 6 years respectively, well longer than is typical in child protection matters. Both boys have special needs that require capable and attentive parenting. The boys show concern over their ongoing living situation, and understandably so.

These boys require a permanent routine, and stable home life. The uncertainty, including the court process, which has surrounded their lives has already lasted too long and needs to end.

These boys' special needs are considerable, and they will need ongoing services as they grow up. They need parents who are attentive and reliable. They also require parents who will make their care a high priority and not expose them to unsafe people or home situations, unlike in the past.

The current resource parents for each boy have provided and can continue to provide the care the boys desire and deserve. . . . Too much of the boys' lives has already passed without a stable and predictable home for them. This can change if termination occurs, followed by adoption. All of this is certainly in these boys' best interest.

This is so even if their mother is not their legal parent any longer. She may well be allowed to participate in their lives to some degree based on the foster parents' current plans.

. . . .

DHHS has made reasonable efforts to prevent removal from the home by providing services such as caseworker services, case management, supervised visits, counseling, drug screening, and parent education.

[¶9] Based on the facts that the court found, all of which have evidentiary support, the court did not err in finding that, despite many years of effort by the mother and the Department, the instability, chaos, and observation of violence to which the children have been subjected must end if they are to have any chance for healthy lives. As the court found, the mother remains unable to protect the children from jeopardy or take responsibility for them within a time that is reasonably calculated to meet their needs. *See* 22 M.R.S.

§ 4055(1)(B)(2)(b)(i), (ii); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195. Although the mother argues, somewhat paradoxically, that the duration of the proceedings, and therefore the multiple opportunities for her to provide safe and stable care for the children, demonstrated a lack of urgency on the Department's part, the court did not err in finding that the long period of uncertainty has in fact been detrimental to the children and that they now desperately need permanency. Nor did the court err or abuse its discretion in determining that the termination of the mother's parental rights was in each child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a); *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

The entry is:

Judgment affirmed.

---

Nathan Seth Levy, Esq., Brunswick, for appellant Mother

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket numbers PC-2011-76, PC-2012-26
FOR CLERK REFERENCE ONLY