MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 143
Docket:       Som-18-215
Submitted
 On Briefs:   October 10, 2018
Decided:      October 23, 2018

Panel:        SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## IN RE CHILD OF CHARLES V.

PER CURIAM

[¶1]  Charles V. appeals from a judgment of the district court (Skowhegan, *Fowle, J.*) terminating his parental rights to his child.[1]  He argues that the record does not support the court's finding of parental unfitness.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  In 2017, when the child was two weeks old, the Department of Health and Human Services filed a child protection petition and a request for a preliminary protection order.  *See* 22 M.R.S. §§ 4032, 4034 (2017).  The petition alleged that there had been several reports from medical professionals and Department caseworkers that there was a threat of physical abuse and verbal

---

[1]  The mother consented to termination of her parental rights.  Accordingly, we focus on the procedural history and findings regarding the father only.

aggression by the father. Additionally, the petition alleged that the father's home was unsanitary and unsafe for the child's continued habitation.

[¶3] The court (*Benson, J.*) entered a jeopardy order, by agreement, placing the child with a foster family in September 2017. *See* 22 M.R.S. § 4035 (2017). As part of the jeopardy order, the father was to participate in medication management; participate in mental health counseling with an anger management component; complete a court-ordered diagnostic evaluation (CODE); participate in random drug screens; establish a safe and sanitary home; and allow unannounced home visits by the Department.

[¶4] From the time of the jeopardy order until December 2017, the father stopped almost all visitation with the child. In addition, the father ceased his mental health counseling in October 2017, resuming only after the Department petitioned for termination of his parental rights on February 2, 2018. *See* 22 M.R.S. § 4052 (2017).

[¶5] A hearing on the petition was held by the court (*Fowle, J.*) on April 26, 2018. Following the hearing, the court entered a judgment granting the petition to terminate the father's parental rights after making comprehensive findings of fact by clear and convincing evidence. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.

[¶6]  The court's decision was based on the following findings of fact, all of which are supported by competent evidence in the record.

> In the present case, the court is concerned that the TPR petition was filed on February 2, 2018, or approximately seven and one half months following the removal of the child from the home, and slightly less than five months following the issuance of the jeopardy order.  Ordinarily, the court would expect that more time would elapse before the petition for termination was filed.  At first glance, this process seems to be moving very quickly, leaving one to wonder whether [the father] has been given sufficient time and opportunity to reunify with his child.  The TPR hearing itself was held 10.5 months following the removal of the child.  Additionally, the uncontroverted evidence presented at hearing established that the Department had been working with the [father] and [the mother] for several months prior to the removal of [the child] from the custody of her parents in June of 2017.  While [the mother's older child] is not the biological child of the father in the present case, it is noteworthy that the Department was working with both parents in an effort to keep [the older child] safely in their home.  According to court documents filed in conjunction with this case, the Department was quite concerned over [the father's] treatment of [the older child], as a number of instances of disturbing conduct by [the father] toward [the older child] are described.  Thus, in considering parental fitness factors described at 22 M.R.S. [§] 4055, it is appropriate to do so in the context of well over one-year involvement by the Department with [the father] and [the mother].
>
> The evidence at hearing, including the testimony of the father, established conclusively that [the father] made very little effort toward reunification until February of this year.  Then the TPR petition was filed . . . .
>
> . . . .
>
> Between September and [the end of] December of 2017, the father chose not to attend any visit with [the child].  Between

October 16, 2017 and February 9, 2018 the father chose not to attend any counseling sessions with [his mental health counselor], or any other providers. Based upon the testimony of [the CODE evaluator], [the mental health counselor], and other professionals, it is likely that the father was going to have a very difficult time in reunifying with [the child] during a timeframe reasonably calculated to meet [the child's] needs. His focus on work and lack of focus on his [child], and his counseling needs during this time frame caused severe harm toward any realistic prospect of timely reunification, particularly in light of the uncontroverted evidence that the [D]epartment had been working with [the mother] and [the father] for several months before the birth of [the child].

. . . .

The father is sincere in his expressed willingness to protect his child from jeopardy, and to take responsibility for [the child]. The court concludes that the father loves [the child]. Unfortunately, the evidence is overwhelming, and recited herein, that the father is not able to protect [the child] from jeopardy, and to take responsibility for [the child's] care within a time period reasonably calculated to meet [the child's needs]. [The child] has been in the custody of DHHS for all but sixteen days of her life. While the court does not doubt the father's sincerity, the testimony of [the CODE psychiatrist] and [the mental health treatment provider] persuade the court, that despite the father's current best efforts, it will be a long, long time before he is able to consistently protect the child from jeopardy and to provide for her needs. One only has to consider the testimony of these witnesses and others . . . to conclude that [the father] is simply not ready to be [the child's] parent and won't be for years. Even had [the father] not dropped out of his efforts toward reunification for an extended period during the fall of 2017, and even had he not stopped attending counseling with [his mental health treatment provider] for nearly four months, the court is at best uncertain[] as to whether that would have made a dispositive difference. At the close of the hearing, the court noted the father's recent progress, but told the father that he really wished that he had not stopped

attending visits and counseling. The impact of the father's decision to place work and income over the needs of his child, and his reunification with the child, cast the dye concerning the outcome of this case. [The child] can simply not afford to wait for at well over an additional year for her father to be ready to provide for her needs and protect her from jeopardy. The efforts made by the Department to assist the father toward responsible parenting capability have lasted well over one year, and he is closer to the starting line than he is the finish line. Accordingly this court determines by clear and convincing evidence that the father . . . is an unfit parent as determined by statute.

## II. DISCUSSION

[¶7] The court did not err in finding that, despite more recent efforts by the father, he remains unable to protect the child from jeopardy or to take responsibility for the child within a time reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195. The father's main argument is that the court's finding that it would be over a year before he was able to safely and successfully parent his child is not supported by sufficient evidence. He asserts that because the testimony about that timeframe was inconsistent between the two mental health professionals, the court could not, by clear and convincing evidence, find that he was unfit on that basis.

[¶8] Contrary to the father's assertions, the court succinctly explained that "[w]hile [it] found [the counselor's] testimony to be credible and helpful,

[it] also found [the counselor's] testimony to border on advocacy to the father." Further, the court did not disregard the testimony of the counselor, but rather viewed it as one piece of the overall larger picture of the father's fitness as a parent. *See In re Child of James R.*, 2018 ME 50, ¶ 12, 182 A.3d 1252 (concluding that the district court did not err when the evidence "fully support[ed] the court's assessment of the evidence" despite some conflicting testimony); *In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199 (stating "[t]he weight and credibility of the testimony and other evidence . . . [is] for the fact-finder's determination").   The court particularly focused on the father's past disconnection from services, noting that the father is essentially back at the starting line in terms of potential reunification.

[¶9]  Likewise, the court did not abuse its discretion in determining that termination of the father's parental rights was in the child's best interests.  *See* 22 M.R.S. § 4055(1)(B)(2)(a); *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

The entry is:

Judgment affirmed.

Aaron B. Rowden, Esq., Waterville, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Skowhegan District Court docket number PC-2017-31
FOR CLERK REFERENCE ONLY