MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 148
Docket:       Lin-18-72
Submitted
  On Briefs:  September 26, 2018
Decided:      November 8, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

IN RE CHILD OF MATTHEW R.

PER CURIAM

[¶1]   Matthew R. appeals from a judgment of the District Court (Wiscasset, *Raimondi, J.*) terminating his parental rights to his son.  He argues that the court erred and abused its discretion in finding that he was unwilling or unable to protect the child from jeopardy and that those circumstances were unlikely to change within a time reasonably calculated to meet the child's needs and in finding that termination of the father's parental rights was in the child's best interest.  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i) (2017).  We affirm the judgment.

[¶2]  In August 2016, while the child was residing with a family member pursuant to a safety plan between the Department of Health and Human Services and the child's parents, the Department filed a petition for a child protection order.  The petition alleged that the mother had a significant substance abuse problem with related periods of incarceration and that the

father was unable to maintain a safe, clean home unaffected by the mother's drug abuse. On November 3, 2016, the court entered an agreed-upon jeopardy order with respect to each parent. Jeopardy as to the father arose from the father's failure to protect the child from being exposed to risks resulting from the mother's drug abuse, including an unsanitary home visited by unsafe people. Jeopardy was also based on the father's inability to exercise independent judgment, separate from the mother, to protect the child. The court placed the child in the Department's custody and maintained the kinship placement.

[¶3] By August 2017, the mother had been incarcerated for violating probation and conditions of house arrest, and the Department petitioned to terminate both parents' parental rights. The petition alleged that the mother had proved unable to stop using drugs and that the father, who would not separate from the mother, was unrealistically confident that she would recover from her addiction and that she could be trusted with the child's care.

[¶4] The termination hearing was held over the course of three days— December 5, 18, and 19, 2017. The court then, upon the mother's consent, entered a judgment terminating the mother's parental rights. After considering all of the evidence presented, the court carefully considered the facts weighing

against termination and those weighing in favor of termination and found, by clear and convincing evidence, the following facts with respect to the father. *See In re Children of Melissa F.*, 2018 ME 110, ¶ 11, 191 A.3d 348.

> There are a number of factors that would support the conclusion that termination is not appropriate in this case. [The father] does not have a problem with substance abuse. He has consistently held down a full-time job . . . for more than 5 years. He has facially complied with some of the Department's requirements. He has obtained safe and appropriate housing. He did participate in a CODE [court ordered diagnostic] evaluation. He has attended counseling. He has visited regularly and consistently with [the child]. He has met and co-operated with the Department's caseworker. The CODE evaluator . . . makes it clear that lack of intelligence and capacity to parent is not an issue here. [The father] and [the child] have a bond with each other. There is no question that [the father] cares about [the child]. All those factors weigh against termination.

> The factors that support termination are clearly laid out in the Guardian's final summary:

>> [The father] has a problematic co-dependent relationship with [the mother] that has spanned over numerous long-term incarcerations and continued drug use. His unyielding loyalty to [the mother] comes at the price of jeopardizing [the child]'s safety. [The father]'s inability and/or refusal to recognize the extent of [the mother]'s drug use and take proactive measures to protect [the child] from the risk [the mother]'s substance abuse poses has caused [the father] to be an unsafe caregiver for [the child]. The only reason [the father] is safely able to have unsupervised visitation with [the child] now is because [the mother] is incarcerated and [the child] is not at risk of being exposed to her substance abuse or the effects thereof.

It is difficult for the court to reconcile [the father]'s intelligence level and capacity to parent with [the child]'s condition and the conditions in which [the child] was living when he came into care. As the Guardian noted in her report dated [August] 2016: "At almost 5 years old, [the child has significant speech delays]." At the home visit immediately preceding the filing of the petition, there was a loaded syringe within [the child]'s reach on the porch. The home was filthy with trash and feces on the floor. Even during the pendency of this case unsanitary conditions persisted until the home was foreclosed upon and [the mother] went to jail. [The mother] was in jail for two years after [the child]'s birth. During that time [the father] was responsible for [the child]'s care. [The child]'s condition as of the filing of the Department's petition is the most compelling evidence as to the care and quality of parenting provided by both [the father] and [the mother].

The question presented to the court is how a competent, caring parent could allow these things to happen, and if anything has changed such that [the child] would be safe in [the father]'s care in the future.

[The father]'s updated reunification plan as of [May 2017] provided that, among other things:

- He was to attend Al-Anon meetings;

- Demonstrate that he is able to make independent judgments in the best interest of [the child];

- Know who the people are that are around [the child] and who associates with [the mother];

- Be involved in [the child]'s pediatrician, dental, eye doctor and Early Headstart appointments and follow through with [the child]'s provider's recommendations; and

- Make a plan in the event that [the mother] relapses or associates with people who are known to use drugs and/ or have criminal involvement.

[The father] never attended Al-Anon meetings. These were particularly recommended to assist him in dealing with his issues of co-dependency with respect to [the mother]. He did go to counseling, but both his counselors were of the opinion that he was not engaged in the counseling or motivated to change. He was attending because the Department made it a requirement for reunification.

[The father] has not demonstrated that he is able to make independent judgments in the best interest of [the child]. He lost unsupervised visitation with [the child] because he allowed [the mother] to have unsupervised contact with [the child] in violation of DHHS restrictions. . . .

. . . .

[The father] is not a bad man. He would not intentionally expend energy to commit a bad act or to harm someone. [The father] lives life in survival mode. Life happens to him. He does what he can to meet his basic needs. He has support from his family members who step in to help—if they can—in the event of catastrophe. [The father] does not appear to have the insight or emotional energy to care for others or to understand the needs of others. He addresses [the mother]'s needs because she insists upon it. Otherwise, [the father] does what he has to do to get by as best he can. He works. He cares for [the child] in his way, but has no understanding of [the child]'s needs, and, therefore, no concept of how to meet them.

[The father]'s most recent counselor testified at hearing that one of [the father]'s positive qualities was steadfastness and loyalty. He has been consistently loyal to [the mother]. When [the mother] is in his life, [the mother] and her needs are the focus of his attention. The irony of this is that [the father]'s loyalty,

dependence and deference to [the mother] causes him to be blind to the safety issues caused by her substance abuse. [The child] has been put at risk as a result. [The father]'s focus on survival and on [the mother]'s needs has left no room for understanding or insight with respect to [the child]'s needs. Nothing about this has changed during the pendency of this case. [The father]'s continued dependence on [the mother] and lack of insight compels the finding that [the child] would continue to be at risk if returned to [the father]'s care.

. . . .

Therefore, based on the foregoing, the court finds by clear and convincing evidence that [the father] is unwilling or unable to protect [the child] from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet [the child]'s needs.

The court also finds that it is in [the child]'s best interest to terminate the parental rights of [the father]. . . .

. . . .

. . . . [The child] . . . is doing very well [in his current placement], and thriving in his environment. When he first came to [the placement], he . . . had significant . . . delays. He is now developmentally on target and his [abilities] ha[ve] improved immeasurably. . . . [H]e has received all the medical, educational and special services he needs to address the issues that existed when he came into care.

[¶5]  The father timely appealed from the judgment. *See* 22 M.R.S. § 4006 (2017); M.R. App. P. 2A(a), 2B(c)(1).

[¶6]  Based on these facts, which have strong evidentiary support, the court did not err in finding that, despite his efforts to comply with the services

arranged by the Department, the father remains unable to understand the child's needs and protect him from the jeopardy presented by the mother's substance abuse and related conduct within a time that is reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195. The father argues that he was placed in an untenable position because to retain his parental rights to the child he would have to implicate the mother in criminal conduct and break off contact with her while she was in prison and expecting their second child. The findings of the court were, however, properly focused on the needs of the child as required by statute. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i). The court found, with evidentiary support, that the father understood and responded to the mother's clearly articulated wishes but did not understand the child's needs and could not prioritize them—a circumstance that was not likely to change within a time reasonably calculated to meet the child's needs. *See id.*

[¶7] Nor did the court err or abuse its discretion in determining that the termination of the father's parental rights was in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a); *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297. The court's determination is fully supported by its findings that the child needs nothing short of permanency as he recovers from a young

childhood during which the parents exposed him to damaging instability and living conditions that did not meet his developmental needs.[1]

The entry is:

Judgment affirmed.

---

Kristina Dougherty, Esq., Wise Old Law, LLC, Portland, for appellant father

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Wiscasset District Court docket number PC-2016-8
FOR CLERK REFERENCE ONLY

---

[1] The child was so badly deprived of love and support in his early years with both parents that he was unable to speak in clear words when he was five years old. He has made rapid and remarkable progress since being placed away from his parents.