2006 ME 142

**In re Doris G. et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 14, 2006.
Decided: Dec. 19, 2006.

Anthony J. Sineni III, Esq., Law Offices of Anthony J. Sineni III, Portland, for appellant.

G. Steven Rowe, Attorney General, Matthew Pollack, Asst. Atty. Gen., Michael Kearney, Asst. Atty. Gen., Augusta, for appellee.

Andrew P.T. Bloom, Esq., Portland, for Guardian ad Litem.

Robert A. Bennett, Esq., Falmouth, for mother.

Panel: SAUFLEY, C.J., and
CLIFFORD, DANA, ALEXANDER,
CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] The father of Doris G., Chelsea G., Patricia G., Leah G., Deborah G., and Carey G. appeals from the judgment of the District Court (Portland, *Powers, J.*) terminating his parental rights as to each of the children. The father contends that the Department of Health and Human Services failed to fulfill its duty, pursuant to 22 M.R.S. § 4041 (2005), to rehabilitate and reunify him with the children, and argues that such failure precluded the court from finding parental unfitness pursuant to 22 M.R.S. § 4055(1)(B)(2)(b)

(2005). The father also contends that there is insufficient evidence in the record to support the court's finding that termination is in the best interest of the children. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The court found the following facts, which are supported by ample evidence in the record.[1] The father has extensive substance abuse, criminal, and personality disorder histories. He has a history of abusing alcohol, and sometimes becomes assaultive while drinking. He has been a regular user of crack cocaine, and has sold or traded drugs at times.

[¶ 3] The father has also been diagnosed with antisocial personality disorder, as well as polysubstance abuse and somatoform disorder, and a low to borderline intelligence with significant cognitive limitations. His antisocial personality disorder is characterized by criminal and substance abuse behaviors, unstable relationships, employment failures, and violence and aggression. The father is self-centered, exploitive of others, and places primary emphasis on his own needs over those of others, including the children. Consistent with his antisocial personality, the father also has an extensive criminal history, including recent convictions.[2]

[¶ 4] The children have all been diagnosed with various mental health problems including depression, anxiety, low self-esteem, ADHD, significant emotional distress, problematic coping styles, adjust-

ment reactions, superficial attachments, emotional immaturity, inability to trust, PTSD, oppositional defiant disorders, attachment disorders, enuresis, emotional avoidance, and aggression. The court found that the children need "pro-social caretakers who function as positive models of adult behavior," as well as "stable, consistent, and permanent caregivers in light of the chaotic family past these girls experienced." The court also found that the children's "caring, stable, and healthy foster placements" are pre-adoptive, with the exception of Leah, who has been invited to the pre-adoptive home of her sisters, Chelsea and Carey. All of the children would be in the same geographic area, and all of their foster parents are willing to facilitate their continued sibling relationship.

[¶ 5] The Department initiated child protection proceedings on behalf of the children in May of 2003. The court's summary preliminary order issued later in the proceedings reflects that "[t]he Department has presented a ... reunification plan," a four-page document attached to the order, which lists the rehabilitation services to be provided to the parents, the Department's role in such services, the visitation schedule and conditions, the Department's anticipated timeline, and a notation of which parties would bear various financial responsibilities. In September of 2003, the court issued an order with the agreement of the father, finding jeopardy as to all the children, based on the father's extensive criminal and substance abuse

---

1. Because the mother does not appeal, evidence relevant to her case only is omitted from this discussion of the facts.

2. In 2004, he was convicted of trafficking in scheduled drugs (Class B), see 17–A M.R.S. § 1103 (2005), for which he was sentenced to four years of incarceration, with all but nine months and one day suspended, and three years of probation. In 2000, the father was

convicted of four counts of endangering the welfare of a child, see 17–A M.R.S. § 554(1) (2005), for which he was sentenced to 364 days of incarceration, with all but forty days suspended, and one year of probation. When he was younger, the father admits that he was arrested many times, often for assaultive behaviors related to alcohol abuse, and spent more than ten years in jail.

histories; his substantial parenting deficits; and his antisocial personality disorder, low cognitive function, and "other problematic personality traits." The jeopardy order required that the Department file a reunification plan: "The Department shall be required to engage in reunification efforts with the father . . . . To that end, [the father] shall meet with the Department's caseworker to develop a reunification plan. Once developed, the plan shall be filed with the court within 30 days and shall be incorporated in this order." The Department never filed such a plan with the court.

[¶ 6] On October 9, 2003, the Department petitioned the court for termination of the parents' rights as to all the children, listing as the basis for the petition, inter alia, the father's failures in rehabilitation and reunification. The court conducted five judicial review hearings between February of 2004 and July of 2005. Following each, the court issued a judicial review order maintaining the status quo, each time finding "by a preponderance of the evidence, that the Department has made reasonable efforts to rehabilitate and reunify the family." In March of 2005, the Department filed a motion to cease reunification, which the father did not oppose.

[¶ 7] The court conducted a seven-day hearing in October of 2005 dealing with four issues: (1) the Department's petition to terminate parental rights, (2) the Department's request to cease reunification, (3) judicial review, and (4) the permanency plan as to all the children. The court issued an extensive, thoughtful, and carefully worded order dated December 15, 2005, terminating both parents' rights to the children.[3] The court found that the parents failed to rebut the presumption of their substance abuse pursuant to 22 M.R.S. § 4055(1-A)(C) (2005),[4] and that, by clear and convincing evidence, (1) the parents are unwilling or unable to protect the children from jeopardy, (2) the parents are unwilling or unable to take responsibility for the children, and (3) termination is in the best interest of the children. See 22 M.R.S. § 4055(1)(B)(2). The court denied the father's subsequent motion to amend its findings of fact. The father filed this appeal.

## II. DISCUSSION

[¶ 8] The court found two grounds of parental unfitness applicable to the father, namely that he is: (1) unable or unwilling to protect the children from jeopardy, and

---

3. The Department withdrew its termination petition as to Samantha G., the eldest of the sisters, because of Samantha's age (then fifteen years old), her wish not to be adopted, and the fact that several of her recent placements were disrupted. The court, however, did order a "planned permanent living arrangement" for Samantha, and also granted the Department's cease reunification order as to all seven girls, including Samantha. Both the cease reunification order and the permanency plan as to Samantha are interlocutory orders, and are thus not appealable pursuant to 22 M.R.S. § 4006 (2005).

4. Section 4055(1-A)(C) provides:
   Rebuttable Presumption. The court may presume that a parent is unwilling or unable to protect the child from jeopardy and

these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs if:
   . . . .
   C. The child has been placed in the legal custody or care of the department, the parent has a chronic substance abuse problem, and the parent's prognosis indicates that the child will not be able to return to the custody of the parent within a reasonable period of time, considering the child's age and the need for a permanent home. The fact that a parent has been unable to provide safe care of a child for a period of 9 months due to substance abuse constitutes a chronic substance abuse problem.
   22 M.R.S. § 4055(1-A)(C) (2005).

these circumstances are unlikely to change within a time reasonably calculated to meet the children's needs; and (2) unwilling or unable to take responsibility for the children within a time reasonably calculated to meet the children's needs. *See* 22 M.R.S. § 4055(B)(2)(b)(i), (ii). The father contends that the Department failed to develop, circulate, and file a reunification plan as the statute requires, and that the court erred in finding that the Department fulfilled its reunification obligation. The father further argues that, absent such a reunification plan, the court was precluded from finding that the father is an unfit parent on either ground.

[¶ 9] "[T]he rehabilitation and reunification plan is the centerpiece of child protective proceedings following a jeopardy determination"; it "provides a roadmap by which the Department and a parent are expected to cooperatively seek to rehabilitate the conditions that resulted in jeopardy to the child, and to reunify the family if reunification can be achieved within a time period that will meet the child's needs." *In re Thomas D.*, 2004 ME 104, ¶ 26, 854 A.2d 195, 203. The establishment of a reunification plan is governed by 22 M.R.S. § 4041. The Department must develop a rehabilitation and reunification plan for a parent when the child enters foster care.[5] 22 M.R.S. § 4041(1–A)(A)(1). Section 4041 requires the Department to "make good faith efforts to seek the participation of the parent" in developing the plan, 22 M.R.S. § 4041(1–A)(A)(1)(a), and to "[m]ake good faith efforts to cooperate with the parent in the pursuit of the plan," 22 M.R.S. § 4041(1–A)(A)(3).

[¶ 10] Section 4041 also imposes duties on the parent to "[c]ooperate with the department in the development of the plan," 22 M.R.S. § 4041(1–A)(B)(2), and to "[m]ake good faith efforts to cooperate with the department in developing and pursuing the plan," 22 M.R.S. § 4041(1–A)(B)(8). The plan should be developed based on information regarding:

> the problems that present a risk of harm to the child, the services needed to address those problems, provisions to ensure the safety of the child while the parent engages in services, a means to measure the extent to which progress has been made, and visitation that protects the child's physical and emotional well-being.

22 M.R.S. § 4041(1–A)(A)(1)(a). Once developed, the plan must include:

> (i) The reasons for the removal of the child from home;
>
> (ii) The changes that are necessary to eliminate jeopardy to the child while in the care of a parent;
>
> (iii) Rehabilitation services that will be provided and must be completed satisfactorily prior to the child's returning home;
>
> (iv) Services that must be provided or made available to assist the parent in rehabilitating and reunifying with the child, as appropriate to the child and family, including, but not limited to, reasonable transportation for the parent for visits and services, child care, housing assistance, assistance with transportation to and from required services and other services that support reunification;
>
> (v) A schedule of and conditions for visits between the child and the parent designed to provide the parent and child time together in settings that provide as positive a parent-child interaction as can practicably be achieved while ensuring

---

5. "A child is considered to have entered foster care on the date of the first judicial finding that the child has been subjected to child abuse or neglect or on the 60th day after the child is removed from the home, whichever occurs first." 22 M.R.S. § 4041(1–A) (2005).

the emotional and physical well-being of the child when visits are not detrimental to the child's best interests;

(vi) Any use of kinship support, including, but not limited to, placement, supervision of visitation, in-home support or respite care;

(vii) A reasonable time schedule for proposed reunification, reasonably calculated to meet the child's needs; and

(viii) A statement of the financial responsibilities of the parent and the department during the reunification process.

22 M.R.S. § 4041(1–A)(A)(1)(c)(i)–(viii). The Department must then circulate the reunification plan to the parties at least ten days prior to a scheduled hearing, and must file the plan with the court during that hearing. 22 M.R.S. § 4041(1–A)(A)(1)(b).

[¶ 11] In this case, the parties agree that no joint complete reunification plan was ever developed or filed with the court, as section 4041 requires. The court, however, made the following findings of fact regarding the reunification plan, and those findings are supported by the record. The father failed to attend a meeting in September of 2003 regarding the reunification plan, despite having received adequate notice of the hearing, and again failed to attend a meeting in October. The Department then set up a third meeting to discuss the reunification plan, but the father twice failed to attend the psychological/parenting capacity evaluation that was to be the focus of that meeting. In 2005, the Department twice requested the father's input in the reunification plan by sending him blank reunification plans in order for him to fill out certain parts, with the expectation that the Department would

then add its input. The father, however, did not return either form. The Department caseworkers devoted many hours of time to meeting with the father and discussing his parenting deficits, the needs of the children, and the services that could help the family reunify. The father also had access to numerous court orders, guardian ad litem reports, evaluations, and test results informing him that it was his criminal history, substance abuse, and antisocial personality disorder that caused the Department to become involved with his children.

[¶ 12] Further, the Department did present a proposed plan to the court at the summary preliminary hearing stage, which, although written only from the perspective of the Department, did list the causes of jeopardy to the children, the changes that would have to be made to eliminate jeopardy, the rehabilitation services to be provided to the parents, the services to be made available to assist the parents in rehabilitation and reunification, the standards by which change and progress would be evaluated, the parents' visitation schedule with the children, available kinship placements, the time schedule for proposed reunification, and the allocation of financial responsibilities.[6] In addition, the court's jeopardy order and judicial review orders required the father to meet with the Department to develop a reunification plan, and to undergo a psychological evaluation, participate in a substance abuse program, and submit to random drug and alcohol testing. The Department's 2005 notice regarding its request to cease reunification further informed the father of his problems and his failures in remedying those problems; the father did not oppose the Department's motion to

---

6. The proposed plan required that the parents "address … their substance use and abuse; demonstrate their ability to parent and pro- vide a clean safe home for their children; and demonstrate an understanding of how their children have been impacted."

cease reunification. Finally, the father never raised the issue of the reunification plan until the termination hearing.

[¶ 13] On the basis of these findings and procedural history, the court further found and concluded:

> It is inaccurate for [the father] to claim that he does not know what he was supposed to do to remedy the parenting deficits in light of the above and the numerous contacts he had with DHHS, psychological examiners, and substance abuse testers and counselors. This court is convinced that [the father] well knew of his criminal behaviors, his psychological anti-social personality deficits, and his substance abuse problems, which all contributed to the removal of his children twice, to serious jeopardy issues, and to his need to deal effectively with those problems to reunify. He at times failed to cooperate with DHHS in its efforts to finalize a written plan. In 2005 he failed to return his portions of two proposed plans from DHHS. This case is not *In re: Thomas D.* The initial plan from DHHS in June 2003, the parents' jeopardy orders and the court's judicial review orders, compiled with the above psychological and substance abuse provider and evaluation information and various attempts to meet or attend meetings between father and DHHS provide the "roadmap" that would otherwise be a written, finalized reunification plan.

Thus, the court justifiably concluded that the father failed to fulfill his obligation, pursuant to section 4041(1–A)(B)(2), (8), to cooperate with the Department's attempts to formulate a reunification plan, and that, despite the failure to develop a joint formal plan, the Department did adequately inform the father of his rehabilitation and reunification obligations and goals.

[¶ 14] The father contends that this conclusion of the court contravenes our holding in *In re Thomas D.* In that case, the Department and the father failed to agree on a rehabilitation and reunification plan, and no such plan of any kind was ever developed or submitted to the court. *Thomas D.*, 2004 ME 104, ¶¶ 8–13, 854 A.2d at 198–99. The trial court nevertheless found that the father was unfit on the ground that he "failed to comply with the required elements of a rehabilitation and reunification plan" in that he did not undergo substance abuse counseling or a batterers intervention program. *Id.* ¶¶ 22, 27, 854 A.2d at 202, 203. We vacated the termination of the father's parental rights, concluding that it was error for the court to premise findings of parental unfitness on the father's "failure to obtain and complete specific services" when no plan had ever informed the father that such services were necessary for rehabilitation and reunification. *Id.* ¶¶ 28, 42, 854 A.2d at 204, 207–08.

■ [¶ 15] Although it is true here, as in *Thomas* D., that no formal jointly signed plan was ever developed or submitted to the court, this case is nevertheless distinguishable from *Thomas* D. First, in this case, the court found, based on competent record evidence, that the father was well aware of what services he was supposed to complete in order to rehabilitate and reunify. In *Thomas D.*, the trial court never made any findings as to the father's awareness of his rehabilitation and reunification responsibilities and goals. Second, the court in the present matter found that at least some portion of the responsibility for the lack of a formal plan was due to the father's failure to cooperate with the Department. Such was not the case in *Thomas* D. Finally, and most significantly, the father's rights in this case were not terminated for failure to engage in and

complete any specific undisclosed services, but rather because of the father's inability to adequately care for, protect, and nurture his children. In *Thomas D.*, the dispositive factor that resulted in termination of the father's parental rights was his failure to engage in specific services.

[¶ 16] We have long held that although the Department's obligations pursuant to section 4041 are mandatory, the Department's failure to satisfy those obligations does not preclude a termination of parental rights. *In re Daniel C.*, 480 A.2d 766, 770 (Me.1984). We have stated: "We simply do not detect any legislative intent that the department's reunification efforts be made a *discrete* element of proof in termination proceedings," even though the court *may* consider the lack of reunification efforts as one factor in evaluating the parent's conduct for unfitness. *Id.* at 770–71. Similarly, in *In re David H.*, we noted, despite the parents' argument that it was the Department's failure to provide adequate reunification services that caused the court to terminate their rights, that "the issue before the court was [the mother and father's] ability and willingness to care for their children, not [the Department's] responsibility for providing support services." 637 A.2d 1173, 1175–76 (Me.1994).

 [¶ 17] The Department's compliance with its rehabilitation and reunification duties as outlined in section 4041 does not constitute a discrete element requiring proof in termination proceedings, nor does the failure of the Department to comply with section 4041 preclude findings of parental unfitness. Only when the Department failed to develop a formal reunification plan, and the parent's rights were nevertheless terminated for failure to comply with specific reunification obligations never communicated to that parent, have we vacated a judgment terminating parental rights. That is not the case here.[7]

 [¶ 18] The father also contends that termination of his parental rights is not in the best interest of the children because their sibling contact is important to them, and could be limited at the discretion of their adoptive parents. Ample record evidence exists, however, to support the court's determination that termination of the parents' rights is in the best interest of the children.

The entry is:

Judgment affirmed.

---

7. In any event, the court also concluded that the father failed to rebut the presumption of unfitness for having a chronic substance abuse problem pursuant to 22 M.R.S. § 4055(1–A)(C). That section provides a sufficient basis on which the court could find parental unfitness, and the father does not challenge the finding that he failed to rebut the presumption.