MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2016 ME 30
Docket:        Fra-15-388
Submitted
 On Briefs:    January 28, 2016
Decided:       February 16, 2016

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

IN RE AIDEN et al.


PER CURIAM

[¶1]  In this consolidated appeal, the mother of Aiden and Benjamin,[1] and the father of Carl, Daryl, and Benjamin appeal from a judgment of the District Court (Farmington, *Carlson, J.*) terminating their parental rights to their children pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2) (2015) after a three-day trial. Regarding the mother, the court found that she is unwilling or unable to protect the children from jeopardy or take responsibility for them within a time reasonably calculated to meet their needs, and it found that termination was in the children's best interests.  *See id.* § 4055(1)(B)(2)(b)(i), (ii).  Regarding the father, the court made the same findings and additionally found that he had failed to make a good faith effort to rehabilitate and reunify with his children.  *See id.* § 4055(B)(2)(b)(iv).

---

[1]  Pseudonyms are used herein to respect the privacy of the children.

[¶2]  The father contends that the court erred in finding him unfit when, he alleges, the Department of Health and Human Services failed to comply with its statutory rehabilitation and reunification responsibilities.  *See* 22 M.R.S. § 4041 (2015).  His argument is primarily based upon the fact that he and the Department never agreed upon a formal rehabilitation and reunification plan.

[¶3]  "[T]he Department's and a parent's failure to complete a rehabilitation and reunification plan . . . is an important factor that must be carefully evaluated" at the termination stage of a child protection action.  *In re Thomas D.*, 2004 ME 104, ¶ 28, 854 A.2d 195.  In this case, the record demonstrates that the father was the cause of the failure to complete a formal rehabilitation and reunification plan.  *See* 22 M.R.S. § 4041(1-A)(B) (outlining a parent's duties regarding reunification).  The court found that the father had been "uninterested in . . . meet[ing] with the Department with respect to reunification."  "When the Department's caseworker attempted to discuss reunification with [the father], he was uncooperative."  The father refused to sign the Department's May 2014 preliminary rehabilitation and reunification plan, testifying: "[B]ecause when it comes to DHS, I don't sign nothing."

[¶4]  Contacting the father also proved difficult.  When a caseworker went to his home, the father "walked away from her and repeated that . . . he did not have to do anything that [the Department] asked him to do."  When the caseworker

spoke with the father during his visits with the children "and attempted to arrange times to meet with [the father]," he "insist[ed] that the Department had made an error in removing the children."[2]

[¶5]  In *In re Doris G.*, 2006 ME 142, 912 A.2d 572, we noted that when the issue on appeal is the Department's and the parent's failure to develop a formal reunification plan, the key inquiry is whether the parent's rights were "terminated for failure to comply with specific reunification obligations *never communicated to that parent*."  *Id.* ¶ 17 (emphasis added).

[¶6]  Here, the judgment and record demonstrate that the reunification plan requirements were communicated to the father.  The Department filed and provided the father with a preliminary proposed rehabilitation and reunification plan identifying (1) the Department's concerns about the conditions of the parents' home and about the father's sister, who had been identified as unsafe, having access to the children; (2) the Department's safety goals for the children; and (3) the preliminary need for the father to complete a sexual abuse risk assessment. A year later, at the time of the termination hearing, the parents had not secured new housing and the father's sister lived directly next door to their home.  In addition, the father failed to attend the psychological assessment that was arranged by the

---

[2]  Although neither party is statutorily required to do so, the Department or a parent may request a case management conference to address reunification disagreements if an informal conference between all parties fails to resolve the issues.  22 M.R.S. § 4041(1-A)(A)(4) (2015).

Department. Finally, the court found and the evidence supports that the Department informed the father that it was concerned about substance abuse and anger management, yet the father refused counseling in those areas and failed to attend any of the drug screenings arranged for him.

[¶7] Turning to the mother's arguments, she contends that the court erred in finding her unfit when, she alleges, the court made unsupported findings and "failed to engage in a critical assessment of probative evidence favorable to [her]." This argument is, in essence, a claim that the court erred in weighing the evidence before it.

[¶8] Review of the record contradicts the mother's contention that the court did not critically assess all of the evidence before it. *See In re Marpheen C.*, 2002 ME 170, ¶¶ 5-6, 8, 812 A.2d 972. In particular, the mother contests the court's finding that she "is unable to provide safe care for [her children], based on the needs of the children as well as her mental health condition." She argues that the portion of the finding related to her mental health is unsupported, as there was no expert testimony regarding her diagnoses or direct evidence that her mental health conditions prevented her from ably parenting the children. The mother testified to her own diagnoses, however, and the mother's mental health was cited as a concern throughout the pendency of the child protection actions. Jeopardy as to the mother was based in part on the fact that she had been "inconsistent in her

medicine management and mental health treatment," and her reunification plan required her to "engage in individual counseling and medication management."

[¶9]  As for the effect that the mother's mental health had on her ability to parent her children, the court was entitled to draw any reasonable inferences from the evidence, *see State v. Woodard*, 2013 ME 36, ¶ 19, 68 A.3d 1250, and we will look to the evidence for inferences that support the court's ultimate findings, *see In re Jazmine L.*, 2004 ME 125, ¶ 20, 861 A.2d 1277.  After careful review of the record, we conclude that the evidence fully supports the court's finding that the mother's mental health issues, as well as the children's individual needs, have caused her to be unable to safely care for these children.

[¶10]  Contrary to each parent's contentions, as to each child, the court found at least one ground of parental unfitness supported by clear and convincing evidence in the record.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii), (iv); *In re I.S.*, 2015 ME 100, ¶ 11, 121 A.3d 105; *In re Doris G.*, 2006 ME 142, ¶¶ 11-13, 15-17, 912 A.2d 572.  Finally, although neither parent contests the issue, there is ample evidence in the record to support the court's finding that termination of each parent's parental rights is in the children's best interests.  *See* 22 M.R.S. § 4055(1)(B)(2)(a); *In re C.P.*, 2013 ME 57, ¶¶ 16, 19, 67 A.3d 558.

The entry is:

Judgment affirmed.

**On the briefs:**

Luann C. Calcagni, Esq., Law Offices of Luann L. Calcagni, Augusta, for appellant mother

Christopher S. Berryment, Esq., Mexico, for appellant father

Janet T. Mills, Attorney General, Xi Chen, Research Asst., and Nora Sosnoff, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Farmington District Court docket numbers PC-2014-1, 2, and 3
FOR CLERK REFERENCE ONLY