MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:      2017 ME 213
Docket:        Yor-17-202
Submitted
  On Briefs:  October 24, 2017
Decided:       November 2, 2017

Panel:         SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


IN RE ANASTASIA M.


PER CURIAM

[¶1]   The mother of Anastasia M. appeals from a judgment of the District Court (Springvale, *Foster, J.*) terminating her parental rights to the child pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(ii) (2016).[1] She challenges the sufficiency of the evidence to support both the court's finding of parental unfitness and its determination that termination is in Anastasia's best interest.   Because the evidence supports the court's factual findings and discretionary determination, we affirm the judgment.

[¶2]  Based on competent evidence in the record, the court found by clear and convincing evidence that the mother (1) is unwilling or unable to protect the child from jeopardy within a time reasonably calculated to meet her needs,

---

[1]  The father's parental rights to Anastasia were also terminated when he failed to secure new counsel after asking the court to remove his previous attorney and subsequently failed to appear for docket call or the termination hearing.  The court found that the father had abandoned the child, and he is not a party to this appeal.

and (2) is unwilling or unable to take responsibility for her within that timeframe. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii). The court also found that termination of the mother's parental rights is in Anastasia's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a). We review the factual findings supporting the unfitness determination for clear error, *see In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430, and apply the same standard to the factual findings supporting the best interest determination, although we review the court's ultimate conclusion that termination is in the child's best interest "for an abuse of discretion, viewing the facts, and the weight to be given them, through the trial court's lens," and giving the court's judgment "substantial deference," *In re Caleb M.*, 2017 ME 66, ¶ 33, 159 A.3d 345 (quotation marks omitted).

[¶3] The court based its determinations on the following findings of fact:

> One of the most difficult sources of jeopardy to rectify in child protection proceedings is the risk posed by domestic violence. In those cases, often one parent is the victim of the other. The dynamics of domestic violence, the interplay of power and control between the parties, and internal and external pressures to reunify as a family can undermine and delay reunification efforts. In a process where time frames are tied to those reasonabl[y] necessary to meet a child's needs, that delay may be fatal to even good-faith efforts to resolve jeopardy. [The mother] has an intimate knowledge of domestic violence.
>
> . . . .

Throughout this case, and particularly at trial, [the mother] minimized her substance abuse. Although initially confirming in her testimony that the issues presented in this matter were alcohol abuse and domestic violence, minutes later she insisted that her own use of alcohol was an issue for a "short period" of her life. . . . Although she agreed at trial that she has a problem with alcohol, [the mother] quickly added that she simply stays away from it.

But she doesn't. She tested positive for the presence of alcohol in January, June and September of 2016. The court does not find [her] explanation, that the January and September tests were attributable to her use of Nyquil, believable.

. . . .

Then there is the issue of misuse of other substances. [The mother] has used marijuana regularly during this case. . . . [She] mentioned that there had been discussion at one point of using a prescribed benzodiazepine instead of the marijuana. Before her prescriber was willing to do so, however, [the mother] needed to go a month without using marijuana; she was unable to do so. She was diagnosed with cannabis use disorder, moderate. [The mother's medication-management provider's] notes indicate she had encouraged her client to stop using marijuana, to no avail.

[The mother] insists she has had no contact with [the father] since early November of 2016. . . . As [the DHHS caseworker] noted at trial, she has been told before by [the mother] that she and [the father] have separated, only to discover that was not the case or that the couple had reunited. As recently as December of 2016, [the mother] received a text message from [the father] with a picture of Anastasia. She admitted to [a visit supervisor] that she and [the father] continued to communicate by telephone, although she did not share that information with [the caseworker].

When asked what it would take for her to resolve the issue of domestic violence in her relationship, [the mother] responded it would require [the father] staying away from her.

. . . .

[The father] is not the only individual who has been abusive to [the mother]. . . . [Her current therapist]'s preliminary treatment plan recites that [the mother] "has been involved in multiple relationships that have involved domestic violence." He noted that [the mother] would need to develop skills to establish and maintain healthy boundaries in her relationships to successfully address this issue. It is not simply a matter of [the father] staying away. [The mother] has to decide to keep him away, acquire the ability to do that, and then exercise that ability, both with [the father] and others. Unfortunately, she has waited too long to do so.

. . . .

The Department did use reasonable efforts to reunify Anastasia with her parents. [The caseworker] negotiated reasonable reunification plans with each parent . . . . She made referrals for services and transportation. She arranged regular visitation between Anastasia and each parent. She convened regular Family Team Meetings to review the status of reunification and address issues . . . .

Anastasia remains in [her second] foster home, where she was placed in April of 2016. She is a happy, healthy child with no discernable developmental delays. She is closely and appropriately bonded to the foster family, and they to her.

. . . .

[T]ime is a pivotal factor in this matter. Anastasia has been out of her parents' care for twenty months, a lifetime for a child who is only two years old. [The mother] is, essentially, only beginning the work she needs to do on her relationships and her substance abuse. It is unclear if she will be successful in that effort. . . . Neither parent can assume responsibility for Anastasia,

or address the risks they present to their daughter, within a time frame necessary to meet her needs.

[¶4]   Given these findings and the court's other extensive, specific findings of fact, all of which are supported by competent evidence in the record, the court did not err in its determination of unfitness nor did it err or abuse its discretion in determining that termination of the mother's parental rights, with a permanency plan of adoption, is in the child's best interest.  *See In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430; *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

The entry is:

Judgment affirmed.

---

Julie-Anne Blanchard, Esq., The Law Office of Julie-Anne Blanchard, LLC, Biddeford, for appellant mother

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Springvale District Court docket number PC-2015-35