MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:      2018 ME 31
Docket:        Yor-17-451
Submitted
  On Briefs:  February 26, 2018
Decided:      March 6, 2018

Panel:        ALEXANDER, J., and, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


IN RE CHILD OF HEATHER W.


PER CURIAM

[¶1]    Heather W. appeals from a judgment of the District Court (Springvale, *Foster, J.*) terminating her parental rights to her daughter pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i), (ii), (iv) (2017).[1]  She challenges the sufficiency of the evidence supporting the court's finding of parental unfitness and the court's discretionary determination that termination is in the best interest of the child.  *See id.* § 4055(1)(B)(2).  Additionally, the mother argues that the Department failed to meet its obligation to provide reunification services pursuant to 22 M.R.S. § 4041 (2017).  We affirm the judgment.

---

[1] The court entered a judgment terminating the father's parental rights to the child after the father consented to termination.  *See* 22 M.R.S. § 4055(1)(A)(1)(a), (B)(1) (2017).  The father does not appeal from that judgment.

2

[¶2]  Based on competent evidence in the record, the court found by clear and convincing evidence that the mother (1) is unable to protect the child from jeopardy and these circumstances are unlikely to change within a time that is reasonably calculated to meet the child's needs, (2) is unable to take responsibility for the child within a time that is reasonably calculated to meet the child's needs, and (3) has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to 22 M.R.S. § 4041.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii), (iv).  The court also determined that termination of the mother's parental rights is in the child's best interest.  *See id.* § 4055(1)(B)(2)(a).  We review the trial court's factual findings supporting the unfitness determination and the best interest determination for clear error, and we review the ultimate decision to terminate parental rights for an abuse of discretion. *In re Anastasia M.*, 2017 ME 213, ¶ 2, 172 A.3d 922.

[¶3]  The court based its determinations on the following findings of fact. The mother was first prescribed opiates in 2010 following a gallbladder issue. She continued using opiates to deal with back pain.  In 2012, the mother was in a car accident and was again prescribed opiates, which she used until after a resulting surgery in January 2013.  When her prescription expired a few months later, she began obtaining unprescribed opiates through other means.

[¶4]  The mother sought treatment for her addiction.  From May 2013 to August 2014, she successfully completed a methadone treatment program.  In the fall of 2014, she experienced another injury, which required surgery.  She was prescribed oxycodone and subsequently relapsed.  The mother continued to use unprescribed opiates for the next five months and soon began injecting heroin.

[¶5]  During this time, the mother and the child were living at the mother's uncle's home.  In April 2015, the mother stole valuable coins from her uncle in order to purchase drugs.  She was charged with theft, and she and the child were evicted from the home.

[¶6]  In May 2015, the Department filed a petition for a child protection order, which the court granted.  The mother waived her right to a summary preliminary hearing and agreed to the entry of a jeopardy order in which the court found that jeopardy as to the mother "consists of her inability to provide adequate care for the child and neglect of the child's basic daily needs due to the mother's long-standing opiate addiction."

[¶7]  Visitation between the mother and the child was fully supervised. There were concerns during some visits that the mother appeared to be falling asleep or "nodding off" at times and that she took extended bathroom breaks.

4

These concerns contributed to the Department's reluctance to ease the requirement of full supervision. There was no visitation between July 9, 2016, and August 28, 2016, when the mother was incarcerated for the theft of coins from her uncle. Upon her release, she "procrastinated" in resuming treatment and visitation with the child because she had relapsed using heroin combined with fentanyl. The mother visited with the child a couple of times in December 2016, but before additional visits were arranged, she was arrested in February 2017 and incarcerated for six months for violating her probation. As of the date of trial, visitation between the mother and the child had not been reestablished.

[¶8] The child is diagnosed with Reactive Attachment Disorder. She has been in three different foster placements as well as a trial placement with the father. She has also been hospitalized in psychiatric crisis centers on two different occasions.

[¶9] At the time of trial, the mother was participating in another substance abuse program, but she was two weeks into a program that can run for up to fifty-two weeks. She stated that she would require thirty to sixty days to secure a residence that could accommodate the child and would be in a

position to parent the child full-time after another three to six months of reunification services. The court ultimately determined the following:

> [The mother] is at the very beginning of a long-term process to achieve and maintain sobriety. She has a "long-standing opiate addiction." At times, she has experienced some success in treatment, notably from May of 2013 to August of 2014. . . . However, she has relapsed repeatedly. She has done so even when fully aware that the return to use of illegal drugs would subject her to incarceration and adversely affect her reunification efforts. [The mother's] projected timeframe for resuming full-time care of [the child] is totally unrealistic given the chronicity of her addiction, the status of her substance abuse treatment, and the period of time that her daughter has been out of her care. It is unfair, and totally contradictory to the terms of the Act, to require [the child] to endure the continued uncertainty of foster care while [the mother] resumes treatment. Time is of the essence in providing [the child] with a permanent home and the stability necessary to allow her the opportunity to work on her own issues in a timely fashion.

[¶10] Given these findings and the court's other specific findings of fact, all of which are supported by competent evidence in the record, the court did not err in its finding of parental unfitness, nor did it err or abuse its discretion in determining that termination of the mother's parental rights, with a permanency plan of adoption, is in the child's best interest. *See In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430; *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

[¶11] The mother also contends that the Department did not meet its burden to provide reunification services pursuant to 22 M.R.S. § 4041 and that

the court erred by failing to consider the negative effect that the Department's efforts had on her ability to reunify. However, the "Department's compliance with its rehabilitation and reunification duties as outlined in section 4041 does not constitute a discrete element requiring proof in termination proceedings, nor does the failure of the Department to comply with section 4041 preclude findings of parental unfitness." *In re Doris G.*, 2006 ME 142, ¶ 17, 912 A.2d 572; *see also* 22 M.R.S. § 4041. Additionally, contrary to the mother's contention, there is ample evidence in the record that the Department made reasonable efforts to rehabilitate and reunify the family.[2] Despite these efforts, the mother was unsuccessful in reunifying with the child.

The entry is:

Judgment affirmed.

---

[2] These efforts included supporting the child in a foster placement, supporting the child in a trial placement with her father, conducting well-being checks of the child, providing individual counseling for the child, providing individual counseling for the mother, facilitating family team meetings, facilitating contact between the child and parents, providing access to an intensive outpatient program for the mother, providing methadone treatment for the mother, making a referral for case management for the mother, providing transportation assistance for the mother, scheduling drug screens for the mother, and providing other services.

Amanda E. Ramirez, Esq., Law Office of Amanda E. Ramirez, Newfield, for appellant mother

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Springvale District Court docket number PC-2015-25
FOR CLERK REFERENCE ONLY