MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2020 ME 14
Docket:        Ken-19-382
Submitted
  On Briefs:  January 23, 2020
Decided:       January 30, 2020

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.


## IN RE CHILDREN OF JAMES B.


PER CURIAM

[¶1]  The mother and father of two children appeal from a judgment of the District Court (Waterville, *Stanfill, J.*) terminating their parental rights to the children.[1]  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i) (2018).  Both parents argue that there was insufficient evidence to support the court's findings of parental unfitness and that the court erred by determining that the termination of their parental rights is in the children's best interests.  The father also asserts that the Department of Health and Human Services did not make reasonable efforts to reunify and rehabilitate his family because it failed to create a written reunification and rehabilitation plan.  *See* 22 M.R.S. § 4041(1-A)(A)(1) (2018).  We affirm the judgment.

## I.  BACKGROUND

---

[1]  Both parents have other children but those children are not the subject of this child protection action.  References in this opinion to "the children" mean the children as to whom the parents' rights have been terminated.

[¶2]  In November of 2017, two days after the birth of the younger child, the Department filed a child protection petition and a request for a preliminary protection order for the children.  The petition alleged that the parents were using illicit substances and were unable to protect the children from "threats of harm."  The court (*E. Walker, J.*) issued a preliminary protection order at that time, granting custody of the children to the Department, which placed them with a foster parent.  After each parent waived the opportunity for a summary preliminary hearing,[2] the court entered an order maintaining the Department's custody of both children.

[¶3]  On March 12, 2018, the court (*Benson, J.*) issued a jeopardy order as to the father.[3]  The father's jeopardy findings included his "history of substance []use," his "extensive criminal history" and his "lack of protective capacity regarding his children."  On March 28, 2018, the court (*Stanfill, J.*) issued a jeopardy order as to the mother.  Jeopardy was based on her "history of chronic substance use" and "high severity [of] neglect."

[¶4]  In November of 2018, the Department filed a petition to terminate the parental rights of both parents.  The court (*Stanfill, J.*) held a two-day

---

[2]  The court found that the father was not properly notified of the date for the summary preliminary hearing and that the father could request a new hearing.  He elected not to do so.

[3]  The father's jeopardy order was amended on March 28, 2018, to correct a clerical error.

hearing on the petition in January of 2019. After both parties rested, the court ordered that the record be held open to allow more time for the parents to demonstrate that they could meet the children's needs. An additional evidentiary hearing was held in March of 2019. While the matter was under advisement, the court re-opened the evidence at the Department's request. The final evidentiary hearing was held in August of 2019.

[¶5] The court entered a judgment that terminated the parental rights of both parents in August of 2019. In support of those determinations, the court made the following findings of fact, all of which are supported by competent record evidence. *See In re Children of Danielle M.*, 2019 ME 174, ¶ 6, --- A.3d ---.

> [T]he children have been in foster care since November 22, 2017. For [the younger child], this means his whole life. [The older child], who is almost 3 1/2 years old, was also the subject of a prior case which was dismissed. . . . Thus, [the older child] has also been in care for all but about 7 months of her life.
>
> [The parents] both have long histories of substance abuse. [The father] also has a history of domestic violence.
>
> . . . .
>
> As the children grew, it became apparent that both of them have high needs. Both are developmentally delayed. . . . As a result, both children have had a host of medical appointments with various specialists as well as regular therapies, occupation and speech.

4

The parents were visiting with the children once a week, but had not been attending any of their appointments. . . The evidence was conflicting as to when they were informed that they *could* do so, and when they were informed that they *should* do so. Although it did not appear in any written reunification plan- indeed, [the father] did not even have a written plan- by the family team meeting in October, there is no question that the parents knew that attending the appointments were important for reunification. At the October family team meeting, the parents were clearly told that they should attend all of the children's appointments in the next 30 days, and that if they did so the visits would be increased. They were informed at that meeting of all upcoming appointments.

Despite the clear emphasis on what they needed to do, the parents failed to attend all the appointments for the next 30 days. To make matters worse, [the mother] had a brief relapse in November. As a result, the Department filed the petition to terminate . . . .

[¶6] Following the evidentiary hearings that took place in January and March of 2019, the court noted an improvement in the parents' ability to verbalize their children's medical needs, but also noted that the parents still did not fully appreciate the severity of the children's medical conditions.

[The parents] demonstrated a better understanding, albeit not perfect, of their children's medical needs. One remaining issue they had not addressed was "third hand" smoke. Specifically, the pulmonologist had made it clear that [the younger child] could not be around even the slightest amount of cigarette smoke. Despite that, the parents sometimes smelled so strongly of cigarette smoke at some visits that the supervisor was choking from it and it made the social worker's eyes water.

[¶7]  In August of 2019, following the Department's motion to re-open the evidence, the court found that the parents were still unable to fully appreciate the children's medical and emotional needs.

> Based on the evidence presented . . . it is clear to this court that the parents were unable to maintain all their commitments. Although there were often reasonable explanations for the missed obligations, the court finds that the parents failed to attend . . . obligations between the March and August court dates.
>
> In addition to struggling to maintain their obligations and schedules, it is also clear to the court that the parents do not fully understand what caring for their children entails. . . .  The pulmonologist testified that the parents had an incomplete understanding of [the younger child's] treatment regimen.  In addition, they have been told many times that [the younger child] cannot be exposed to even the smell of cigarette (and probably marijuana) smoke- i.e., third- hand smoke . . . yet the parents continue to smoke to the point that they smelled strongly of it to the doctor, and the occupational therapist testified that she got nauseous from the smell.  While they can verbalize that [the younger child] has breathing problems and shouldn't be around smoke, they continue to smoke and expose him to irritants during visits.  They say they wouldn't smoke in the house or around the children.  Nonetheless, [the mother] said more than once that they []can't help it[] if smoke gets on their clothes, indicating a lack of appreciation for the risks to [the younger child].
>
> . . . Based on the reports of supervisors and others present during the [supervised] visits, there is a real question whether there is a real bond or attachment between either parent and the children. . . .  There is also a question of whether the parents can read or understand the children's cues or signs during visits- e.g., when a child has had enough.

. . . [T]he children have high needs and unique medical issues that are essential for their caregivers to understand. Both children are anxious and cannot tolerate any further trauma.

[¶8] Based on these findings, the court found that both parents are unable to protect the children from jeopardy and these circumstances are unlikely to change within a time that is reasonably calculated to meet the children's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i). In addition, the court found that termination of the parents' parental rights is in the children's best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a).

[¶9] The parents timely appealed from the court's judgment. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2A, 2B.

## II. DISCUSSION

A.    Termination of the Mother's and Father's Parental Rights

[¶10] Both parents assert that there was insufficient evidence to support the court's judgment terminating their parental rights.[4] "In order to terminate parental rights, the court must find, by clear and convincing

---

[4] The father also argues that the court erred in referencing the guardian ad litem's (GAL) opinion during the final hearing because the GAL did not abide by the statutory requirements, which mandates "face-to-face contact with the child[ren] . . . at least once every 3 months" and a "report to the court and all parties in writing at 6-month intervals." *See* 22 M.R.S. § 4005(1)(B) (2018). This issue was not raised in the trial court. Therefore, this argument requires no further discussion. *See In re Mathew H.*, 2017 ME 151, ¶ 8, 167 A.3d 561; *In re Kaleb C.*, 2002 ME 65, ¶ 4 n.2, 795 A.2d 71 (holding that although the GAL did not meet with the children after the court's initial decision or file a subsequent report, "the deficiencies in the guardian's performance did not affect the result [of the] case").

evidence, at least one of the four statutory grounds of parental unfitness." *In re Child of Katherine C.*, 2019 ME 146, ¶ 2, 217 A.3d 68 (alterations omitted) (quotation marks omitted). "We will set aside a finding of parental unfitness only if there is no competent evidence in the record to support it, if the fact-finder clearly misapprehends the meaning of the evidence, or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case." *Id*. (quotation marks omitted). "We review the court's factual findings related to the child's best interest for clear error, and its ultimate conclusion regarding the child's best interest for an abuse of discretion, viewing the facts, and the weight to be given them, through the trial court's lens." *In re Children of Christopher S.*, 2019 ME 31, ¶ 7, 203 A.3d 808 (quotation marks omitted).

[¶11]    Viewing the record in its entirety, we conclude that (1) competent evidence in the record supports the court's finding that both parents are parentally unfit, *see* 22 M.R.S. § 4055(1)(B)(2)(b)(i), and (2) the court did not commit clear error or abuse its discretion in determining that termination of both parents' parental rights is in the children's best interests, *see* 22 M.R.S. § 4055(1)(B)(2)(a). *See In re Children of Danielle M.*, 2019 ME 174, ¶ 14, --- A.3d ---.

B.      Rehabilitation and Reunification Plan

[¶12]  Finally, the father contends that the court erred in finding that the Department had made reasonable efforts to reunify and rehabilitate his family, in part because it did not create a written plan for him.  *See* 22 M.R.S. § 4041(1-A)(A)(1).

[¶13]  "The Department's compliance with its rehabilitation and reunification duties as outlined in section 4041 does not constitute a discrete element requiring proof in termination proceedings, nor does the failure of the Department to comply with section 4041 preclude findings of parental unfitness."  *In re Doris G.*, 2006 ME 142, ¶ 17, 912 A.2d 572.  "Only when the Department failed to develop a formal reunification plan, and the parent's rights were nevertheless terminated for failure to comply with specific reunification obligations never communicated to that parent, have we vacated a judgment terminating parental rights."  *Id.*; *see In re Thomas D.*, 2004 ME 104, ¶ 42, 854 A.2d 195.

[¶14]  Here, despite the lack of a written plan, the record demonstrates that the reunification requirements were sufficiently communicated to the father.  He was provided with specific reunification obligations in his jeopardy order and his judicial review order from August of 2019.  His parental

obligations, especially attending all his children's appointments, were also reviewed at two family team meetings.  Finally, the court held open the record following the termination hearing in January of 2019 to allow the parents more time to meet the needs of their children, clearly outlining in the record the importance of abstaining from use of illicit substances and attending all medical appointments and supervised visits.  Therefore, despite the absence of a written plan, the father's responsibilities regarding rehabilitation and reunification were clearly communicated to him.  His rights were terminated because he failed to adequately meet his children's needs.  *See In re Dakota K.,* 2016 ME 30, ¶ 6, 133 A.3d 257*; In re Doris G.,* 2006 ME 142, ¶ 15, 912 A.2d 572; *cf. In re Thomas D.,* 2004 ME 104, ¶ 42, 854 A.2d 195.

The entry is:

Judgment affirmed.

---

Kristina Dougherty, Esq., Chester & Vestal, P.A., Portland, for appellant father

Wendy D. Hatch, Esq., Waterville, for appellant mother

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Waterville District Court docket number PC-2017-46